F. C. Downing v. State of Missouri.

1. In an indictment against D. founded on the Act to suppress private bank notes, it was proved, that D. was secretary or cashier of a certain private banking establishment, and resided in Wisconsin T. and signed the notes of said concern as such cashier—that the president, whose signature was also attached to the notes, resided in St. Louis, and kept a broker's office—that the president had exchanged two of said notes for two notes on the Illinois bank, at the request of witness—that said notes were seen in circulation in the city of St. Louis, and had been redeemed at the office of the president—that D. had been seen once in St. Louis only, when he made some inquiries into his liability on said notes. Held, that there was no evidence of a circulation of said notes by D.

2. An indictment describing a note as purporting to be *payable to the holder*, when on its face, it purports to be *payable to bearer*, is bad.

ERROR to the circuit court of St. Louis county.

*Geyer*, attorney for plaintiff in error:

1st. That the facts do not shew the commission of any indictable offence by the passing of the note in the indictment set forth, even if Downing is to be held responsible for the act of Conaut.

- The single act of passing a note, is not a putting in circulation within the meaning of the first section of the act, the offence there prohibited being the original emission.

The facts do not show that the note was passed to Benoist as a circulating medium, but to be handed to Mr. Mulligan as a form.

To infer that the note was given to Benoist for a purpose other than that declared by himself, is doing violence to the facts not allowed in any case.

2nd. There is no evidence to connect Downing with Conaut in the act of passing the note to Benoist.

There is not any evidence that he had even a knowledge of the act of Conaut.

The weight of evidence is, that Downing has not at any time, done any act in relation to the circulation of the note in Missouri.

3rd. The indictment is insufficient in that—it does not charge the offence as prohibited by the statute—the instrument set out is not a note—nor does it purport that money will be paid to the receiver or holder, thereof—nor that it will be received in payment of debts. The word purport, in an indictment or statute, imports what appears on the face of the instrument, and not its legal effect.—East's Crown law; 2 Russell on Crimes, 362-3, 4; Arch. Crim. Pl. 48.

JUNE TERM
1837.

F. C. Downing
v.
State of Missouri.

Statement of the case and opinion of the court, deliver-
ed by TOMPKINS, Judge.

Downing was found guilty on an indictment in the cir-
cuit court of St. Louis county, of putting in circulation
as a circulating medium a certain note, contrary to the
provisions of an act of the Assembly, entitled "an act to
suppress private bank notes," and found guilty.  He mo-
ved in arrest of judgment, and for a new trial, and each
of his motions was overruled.  He now brings up the
cause by a writ of error, to reverse the judgment of the
circuit court.

In an indictment against D., found-ed on the Act to suppress private bank notes, it was proved that D. was secretary, or cash-ier, of a certain private banking establishment, and resided in Wisconsin Terri-tory, and signed the notes of said concern as such cashier; that the president, whose signature was al-so attached to the notes, resided in St.Louis, and kept a broker's office; that the president had exchanged two of said notes for two notes on the Illinois bank, at the request of witness; that said notes were seen in circulation in the city of St. Louis, and had been re-deemed at the of-fice of the presi-dent; that D. had been seen once in St. Louis only, when he made some inquiries in-to his liability on said notes. Held, that there was no evidence of a cir-culation of said notes by D.

On the trial of the cause, the State produced as a wit-
ness Louis A. Benoist, who testifies, that about the time
mentioned in the indictment, Mr. Charles Mulligan of St.
Louis, asked the witness whether he had any notes of the
Illinois Savings Bank, saying he wished to see the form
of them.   The witness then went to the office of the Il-
linois Savings Bank, in the city and county of St. Louis,
kept by Elisha L. Conaut, and told said Conaut that Mul-
ligan wanted to see one of said notes, for the purpose of
seeing the form—that said Conaut then handed witness
two notes, one of which is hereinafter set forth, and the
other payable, generally without naming the place, each
being for five dollars.   The witness at the time, gave
Conaut a five dollar note on the Bank of Illinois, and af-
terwards sent him five dollars more, to pay for the said
two notes of the Illinois Savings Bank.   The State hav-
ing first proved the signature of the said Conaut as pres-
ident, and of the said Downing as secretary, read to the
jury the following instrument of writing, to wit: "Real
estate pledged, No. 332.   Office of the Illinois Savings
Bank at St. Louis, will pay on demand to bearer, five
dollars for that amount received on deposite, No. 332.
Burlington, W. T., 25th July, 1836.   F. C. Downing,
secretary, E. L. Conaut, president."   It appeared that
the instrument so set forth, was one of the two notes re-
ceived by L. A. Benoist from said Conaut, and that it
was partly printed from an engraving, and partly written
as Bank notes usually are.   It appeared also, that sever-
al other like notes of the Illinois Savings Bank had been
seen in circulation in St. Louis—that said Conaut keeps
a broker's office in St. Louis—that he had redeemed sev-
eral of the notes when presented at his office, and had
endeavored to prevail on Louis A. Benoist and another
person, two brokers in the city of St. Louis, to encourage
the circulation of the said notes by receiving them at
their offices.   It appeared that Downing resided at Bur-

lington, in Wisconsin Territory, where he kept an office called the Illinois Savings Bank—that Downing formerly resided in St. Louis—that he removed to Wisconsin Territory, where he had since resided. There was no evidence that he had been within the State of Missouri after he removed to Wisconsin, except last summer, when he had a conversation with said Benoist; in which, he inquired of Benoist, whether he thought that he, Downing, would be liable personally for the notes signed by him as secretary; to which, Benoist answering in the affirmative, Downing said it was strange, that he had nothing to do with the Bank but as secretary—that he signed the notes as any cashier of any other bank would, and he had never heard a cashier was held liable for the notes signed by him.

The evidence given against Downing in this case, appears to be very weak;—as the testimony of Benoist, on which alone the case rests, is calculated to implicate Conaut rather than Downing; but if he even had been prosecuted, it would seem hard to convict him, inasmuch as it does not appear from the testimony, that he put the two notes into circulation. Benoist did not ask him to sell or exchange a note with him. From the manner in which Benoist addressed him, a plain man would suppose that Benoist only asked to be permitted to keep one of them a short time, for the gratification of the curiosity of Mulligan; and the circumstance that Benoist handed him a five dollar, Illinois note did not seem calculated altogether to rebut the presumption. The scene is closed and the offence consummated, by the act of sending Conaut another Illinois note. Conaut certainly was at liberty to go and demand his paper, and to consider the Illinois note left with him as a pledge for the return of the other notes. We might indeed congratulate ourselves on the good dispositions of our population, if no stronger evidence of a disposition to offend against the laws of the land could be found. But how is Downing connected with this offence against the statute? He was a resident in Michigan, and last summer, a few weeks before the finding of this bill, he had been in St. Louis, which had once been his place of residence, and had there held a conversation with Benoist, in which he requested B's opinion in regard to his, D's liability to pay the notes of the Illinois Savings Bank, signed by him as cashier or secretary.— But Conaut was president of the same bank, and as such, had signed the notes; and he had tried to persuade two other brokers in St. Louis to redeem the notes of the Il-

linois Savings Bank. It appears to me to be a difficult matter, to strain the act of Conaut in giving the two notes of the Savings Bank to Benoist for the gratification of Mulligan's curiosity, into an offence against the "act to suppress private bank notes," even when we connect this act with his conversations with Benoist, and his alleged attempts to persuade the two brokers to redeem those notes. But if we consider that Downing is not, by the evidence, made an associate in this act of Conaut, nor privy to his conversation even, it would seem that the jury ought to have had no scruple to find him not guilty. The circuit court should then, in my opinion have granted a new trial.

An indictment describing a note as purporting to be *payable to the holder*, when, on its face, it purports to be *payable to bearer*, is bad.

The defendant moved also in arrest of judgment, assigning for reason, that the indictment does not charge the offence prohibited by the statute. The statute is in these words, viz: No person unauthorized by law, shall intentionally create, or put in circulation as a circulating medium, any note, bill, check or ticket, purporting that any money will be paid to the receiver or holder thereof, &c.—See Digest of 1835, p. 96.

The indictment charges that Downing did, &c. put in circulation as a circulating medium, a certain note, purporting that five dollars will be paid to the *holder* thereof. The note given in evidence purported to be payable to *bearer*. It is certain that the legal effect of the note as set out in the indictment, and as it is proved, is the same. But as it was attempted to describe the note, not according to its legal effect, but to describe it as it existed, it should have been so done. That such is the true meaning of the word "*purport*" is sufficiently established by authority—see Russell on crimes, vol. 2, p. 361-2-3.— One of the cases there cited, is this: an indictment was found for forging an acceptance of a bill of exchange, of which the following is a copy: "Forty days after date, pay to Jeremiah Reading or order, the sum of £80, for value received, and place it to the account of John White. To John Ring, Berkley street, &c." And the indictment charged that the prisoner having such bill in his possession, purporting to be signed by one John White, and to be directed to one John King, by the name, and description of one John Ring, of Berkley street, &c.— forged an acceptance in writing, purporting to be an acceptance of the said John King. The bill when produced, appeared to be accepted on the back of it, by John King, and it was proved that when the prisoner negotiated the bill, he stated the Mr. King was a gentleman liv-

JUNE TERM
1837.

F. C. Downing
v.
State of Missouri.

ing in Berkley street, and a man of opulence; but in fact, there was no person of that name living there. The prisoner having been found guilty, the case was submitted to the consideration of the Twelve Judges, who determined that the judgment ought to be arrested, on the ground, that the bill did not in fact *purport* to be directed to one John King, as stated in the indictment. Buller, Judge, in delivering the opinion of the Judges said, it is clear, that where an instrument is to be set forth, the description that it purports a particular fact, necessarily means, that what is stated as the purport of the instrument, appears on the face of the instrument itself.

In the case before this court, the indictment charges that Downing put in circulation, &c. a certain note, purporting that five dollars will be paid to the *holder* thereof, and the note offered in evidence purported that five dollars would be paid to the *bearer* thereof. This is clearly a wrong description of the note, and for this reason, the judgment ought, in my opinion, to have been arrested. Being then of opinion, that a new trial ought to have been granted, and that the judgment also, ought to have been arrested, and the presiding Judge concurring in that opinion, the judgment of the circuit court is reversed.

McGirk, Judge. I concur in the foregoing opinion.