State *v.* Page & Bacon.

———

THE STATE, Respondent, *vs.* PAGE & BACON, Appellants.

1. An indictment framed under the first and second sections of the act to prevent illegal banking, (R. C. 1845,) which charges the defendant with making or putting in circulation a note, bill, check or ticket *purporting* that money will be paid to the *receiver* or *holder* thereof, or that it will be received in payment of debts, can only be sustained by the production and giving in evidence of a note, bill, check or ticket, which, *upon its own face,* declares that money will be paid to the receiver or holder thereof, or that it will be received in payment of debts. (Scott, J., dissenting.)

2. The word "*purporting,*" in the first section of the act, does not apply to the last clause of the section. This clause is violated whenever a party creates or puts in circulation notes, bills, checks or tickets " to be used as a currency or medium of trade in lieu of money," whatever may be their purport.

*Appeal from St. Louis Criminal Court.*

*Glover & Richardson, Leslie & Barrets,* for appellants. The evidence did not sustain the indictment. The indictment charges the defendants with creating, putting in circulation, signing, countersigning and endorsing notes, bills, &c., purporting that money will be paid to the *holder* or *receiver* thereof, &c. The notes offered in evidence purported to be payable to *bearer.* The word " purporting" in the indictment and in the statute, is a word of technical import, and signifies that the notes, bills, &c., *on their face* are made payable to the receiver or holder. Archbold, 47. 2 Russell on Crimes, 343 to 349. *King* v. *Jones,* 1 Doug. 302. 4 Cranch, 167. The word " purporting," in the indictment, was demanded by

the law.   The word in the statute is connected with all the sub-
sequent members of the sentence.   But whether the law re-
quired the word to be used or not in the indictment, yet as it
has been used, it must be supported by the evidence.   This
very point was settled in 4 Mo. Rep. 572.

*H. A. Clover*, for the State.   The word "*purport*," as
used in the statute, must be held to signify the legal purport,
in contradistinction from the apparent purport, in order to give
force and efficacy to the law of the state.   There is a distinc-
tion between the meaning of the word "*purport*," when used
in pleading, and when used in a statute.   Where a pleader
*unnecessarily* uses the term in pleading, the instrument pro-
duced in evidence must appear, upon the face of it, to be what
it is described as purporting to be, because this is its apparent
import, and the pleader might have used other words, as "to
the tenor," "to the effect."   The legal purport, on the other
hand, is its legal effect, and the legal purport is properly set
forth in the indictment.   The court is urged to review the de-
cision of *Downing* v. *The State*, 4 Mo. Rep. 572.   To con-
strue the term "purport" as contended for, would be to render
the statute nugatory, against any one who chooses to evade it.

RYLAND, Judge, delivered the opinion of the court.

In this case, the indictment charges that Daniel D. Page and
Henry D. Bacon, being money brokers and exchange dealers,
doing business under the name, style and firm of Page & Ba-
con, in St. Louis county, on, &c., at, &c., with force and
arms, being unauthorized by law, and whilst they were money
brokers and exchange dealers aforesaid, unlawfully did create
and put in circulation, as a circulating medium, divers notes,
bills, checks and tickets, purporting that money will be paid to
the receiver, holder and bearer thereof, said notes, bills, checks
and tickets to be then and there used as currency and as a me-
dium of trade in lieu of money, and that said notes, bills,
checks and tickets·will be received in payment of debts, that is

State *v.* Page & Bacon.

to say, fifty notes each of the denomination of one dollar; fifty notes each of the denomination of three dollars; fifty notes each of the denomination of five dollars; fifty bills each of the denomination of one dollar, &c.; fifty checks each of the denomination of one dollar, &c.; fifty tickets each of the denomination of one dollar, &c.—(in like denomination as the notes,) against the peace, &c., of the state.

The second count charges, that said defendants unlawfully did issue, sign, countersign and endorse divers notes, bills, checks and tickets, then and there created and put in circulation as a circulating medium, and purporting that money will be paid to the receiver, bearer and holder thereof, and then and there to be used as currency, and as a medium of trade in lieu of money, to-wit: forty notes each of the denomination of one dollar, &c.; forty bills each of the denomination of one dollar, &c.; forty checks each of the denomination of one dollar, &c.; forty tickets each of the denomination of one dollar, &c.; describing them as of various denominations, from one to five dollars, against the peace and dignity of the state.

At the March term, 1853, of the St. Louis Criminal Court, the defendants were tried and convicted, and fined each one thousand dollars. Motions in arrest of judgment and for new trial were made, overruled and excepted to, and the defendants bring the case here by appeal.

The defendants complain, that the court below admitted improper evidence to be given on the part of the State in support of this indictment.

The certificates or instruments offered in evidence in support of the prosecution, and charged to have been created and put in circulation, and those charged to have been issued and signed by the defendants and put in circulation, are as follows:

No. 939.      Page & Bacon      A    Five.

Banking House,      St. Louis, Mo.

(Vignette.)             (Vignette.)

St. Louis,          January 1, 1852.

This certifies, that Thos. Brown has deposited in

State *v.* Page & Bacon.

this office, five dollars, payable to bearer, at the (Vignette.) banking house of Flagg & Savage, Quincy, Ills.

PAGE & BACON.

3  No. 3631.           Page & Bacon.          A
    Banking House.      (Vignette.)              Three.
                                          St. Louis, Mo.
St. Louis,                               January 1, 1852.
(Vignette.)   This certifies Thos. Brown has deposited in this office, three dollars, payable to bearer, at the banking house of Flagg & Savage.
Three.          PAGE & BACON.              (Vignette.)

1  No. 5416.           Page & Bacon.          A
(Vignette.)    Banking House.    (Vignette.)        One.
                                          St. Louis, Mo.
                                          January 1, 1852.
This certifies, that Thos. Brown has deposited in this office, (Vignette.) one dollar, payable to bearer, at the banking house of Flagg & Savage.
Quincy, Ills.
One.            PAGE & BACON.              (Vignette.)

The defendants objected to the offering and giving these certificates in evidence to the jury ; the court permitted them to be read in evidence, and the defendants excepted.

1. In the opinion of this court, the Criminal Court erred in permitting these certificates to be read and given in evidence before the jury, under any count of the indictment.

The indictment charges that the defendants did create and put in circulation, and did issue, sign, countersign and endorse divers notes, bills, checks and tickets, "*purporting*" "that money will be paid to the receiver, bearer and holder thereof." The word "purporting," in the indictment and in the statute, is a word of technical meaning. Buller, J., in delivering the opinion of the judges in Reading's case, 2 Leach, 590, said : "It is clear that, where an instrument is to be set

forth, the description that it *purports* a particular fact, necessarily means that what is stated as the purport of the instrument, appears on the face of the instrument itself." Again, in Gilchrist's case, 2 Leach, 657, Buller, J., in delivering the opinion of the judges, said: " Old cases have given rise to much learning and argument on the words " purport" and " tenor," and the books are full of distinctions as to the meaning of these words, and the necessity of using the one or the other of them in indictments, where written instruments are to be stated; but among the many cases upon this subject, I can find no judicial determination that the purport and the tenor should both be stated in any case whatever. Purport means the substance of an instrument, as it appears on the face of it to every eye that reads it ; tenor means an exact copy of it." Russell says, but with respect to the word " purport," it should be well observed, that it imports what appears on the face of the instrument, as a want of attention to this meaning of the word has been fatal to many indictments. 2 Russell on Crimes, 345, side p. 364.

Archbold, in his " Criminal Pleadings," p. 58, says : " If an indictment describe a written instrument as purporting to be so and so, the instrument, when produced in evidence, must appear upon the face of it, to be what it is described as purporting to be; otherwise the defendant will be acquitted for variance. In the case of the *King* v. *Jones*, Doug. Rep. 289, Lord Mansfield said, " the representations of the prisoner to Royner, after the note was made, could not alter the *purport*, which is what appears on the face of the instrument itself."

There is no necessity for searching the books any further upon the subject, as this court recognized the same principle, and referred to some of the books above quoted, in the case of *Downing* v. *The State*, 4 Mo. 572, opinion by Judge Tompkins and concurred in by Judge McGirk.

In the case of *Downing* v. *The State*, the indictment charged, that Downing put in circulation, &c., a certain note, purporting that five dollars will be paid to the holder thereof, and

HARVARD LAW LIBRARY

State *v.* Page & Bacon.

the note offered in evidence purported that five dollars would be paid to the bearer thereof. The court said, this is clearly a wrong description of the note, and for this reason the judgment ought to have been arrested. The court, in the opinion delivered, remarked, that it is certain that the legal effect of the note, as set out in the indictment, and, as it is proved, is the same, but as it was attempted to describe the note, not according to its legal effect, but to describe it as it existed, it should have been so done ; that such is the meaning of the word *purport*, is sufficiently established by authority. This decision was made in 1837, and the use of the word purport and its technical meaning, was thus made known by the highest judicial authority of this state. The words of the statute of 1835, under which Downing was indicted, are as follows : " No person unauthorized by law, shall intentionally create or put in circulation, as a circulating medium, any note, bill, check or ticket, purporting that any money will be paid to the receiver or holder thereof." R. C., 1835. In the Revised Code of 1845, the words, " or that it will be received in payment of debts, or to be used as a currency or medium of trade in lieu of money," are added.

We cannot then, suppose, that the legislature, in their Digest of 1845, used the word " purport" or " purporting" in a different sense from the judicial interpretation given to it in the statute of 1835.

We adhere to the decision of the court in Downing's case, and, consequently, the judgment of the Criminal Court must be reversed. Judge Gamble concurs in this opinion; Judge Scott dissents.

GAMBLE, Judge. I concur in the opinion of Judge Ryland, that when an indictment, framed under the first and second sections of the act to prevent illegal banking, (R. C. 167,) charges the defendant with making or putting in circulation a note, bill, check or ticket, *purporting* that money will be paid to the receiver or holder thereof, or that it will be received in

payment of debts, the indictment can only be sustained by the production and giving in evidence of a note, bill, check or ticket, which, upon its own face, declares that money will be paid to the receiver or holder thereof, or that it will be received in payment of debts. I think it necessary, however, to state my views of the first section of the act which prohibits the making such paper or putting it in circulation. It is in these words: "No person, unauthorized by law, shall create or put in circulation, as a circulating medium, any note, bill, check, or ticket, purporting that any money will be paid to the receiver or holder thereof, or that it will be received in payment of debts, or to be used as a currency, or medium of trade in lieu of money."

2. It has been said that a person cannot be punished under this act for making and circulating any paper that on its face has not the purport mentioned in the statute, if the word "purport" is to have the signification usually given to it in the decisions of courts. This, as I apprehend, is a misconstruction of the section. The section prohibits the creation or putting in circulation of paper purporting that money will be paid to the receiver or holder, or purporting that it will be received in payment of debts. This is as far as the word "purporting" applies to the acts prohibited. The next and last clause in the section, "or to be used as a currency, or medium of trade in lieu of money," is entirely distinct from those to which the word "purporting" applies, and embraces all cases in which any person creates or puts in circulation, as a circulating medium, "any note, bill, check or ticket to be used as a currency or medium of trade in lieu of money," whatever may be its purport. It is evident that this last clause of the section would be made nonsensical by applying the word "purporting" to it, so as to read, "or *purporting to be used* as a currency or medium of trade in lieu of money." The section then, prohibits, most distinctly, the issuing of paper designed to be used as a currency, without regard to the form in which it may be made, and under this section, there is no necessity for stating that

the purport of the paper issued is, that money will be paid to the holder, or that it will be received in payment of debts, if it is created or issued to be used as a currency or medium of trade in lieu of money. The prohibition is effectual, when the intention of the party is to make an unauthorized currency, whatever ingenuity may be employed in devising the form of paper to be issued.

In this view of the statute, Judge Ryland concurs.

Scott, J., dissenting. This was an indictment under the first section of the act to prevent illegal banking and the circulation of depreciated paper currency within the limits of this state. That section enacts, that no person, unauthorized by law, shall create or put in circulation, as a circulating medium, any note, bill, check or ticket purporting that any money will be paid to the receiver or holder, or that it will be received in payment of debts, or to be used as a currency or medium of trade in lieu of money.

It was contended for the defendants that, under this section, no indictment could be sustained, unless the bill put in circulation corresponded, literally, with the description contained in the statute. That is, unless the note, bill, check or ticket, on its face, was expressed in the identical words used in the act, the party charged with a violation of the law could not be convicted. The argument amounts to this : that, if the party intending to violate the statute, will take the precaution to avoid the use of the words " receiver" or " holder," in creating his circulating medium, and employ the terms " bearer" or " possessor," or any other than the identical words of the statute, how fully soever they may correspond with them in sense, he will be guilty of no violation of the law.

The case of the *State* v. *Downing*, 4 Mo. Rep., was relied on in support of the defence. That case holds that, on an indictment for putting in circulation paper, purporting that five dollars would be paid to the *holder* thereof, a note purporting to be payable to the *bearer* thereof, could not be given in evi-

dence, on the ground that the word " purporting," in the statute, means the same thing that it does in indictments for forgery ; that it is a technical word, and means an exact copy, and unless there is a precise and literal correspondence between the instrument, as set out in the indictment, and that put in circulation, there is no offence against the law.

I know of no principle which requires that the word " purport" or " purporting," when found in a statute, should bear the same signification as when used in an indictment for forgery. In indictments for forgery and for sending threatening letters, the law requires the instruments to be exactly set forth, in order that the courts may be enabled to determine whether they are such as the law contemplates, when forgery and the sending of threatening letters are prohibited. In statutes the word " purporting" is usual, because its signification is so broad as to admit of a latitude of interpretation. Its sense is " meaning," " intending," " evidencing." Take the word as used in the third section of the act concerning conveyances, and give it the interpretation contended for, and the novelty of the argument will at once be perceived. So, take the word as used in various other parts of the code. I have never understood that in the construction of statutes, the word " purporting" was a technical one, or that it has any other sense than the popular one. It would be making a solecism to give it the interpretation desired, when used in statutes.

In order to comprehend this matter, it must be borne in mind that in framing an indictment under a statute, it is necessary to follow its words in the description of the offence. In drawing a count on the section under consideration, it is necessary to describe the instrument in the terms employed by the statute, otherwise the indictment will be bad. So that, under the construction contended for, if the individual intending to violate the law will only look at its terms, and in creating his circulating medium, instead of making it so that it will be paid to the " receiver" or " holder" (the words of the statute) will make it purport that it will be paid to the " bearer" or " pos-

15—VOL. XIX.

sessor" thereof, he will not be convicted, as the instrument does not literally follow the words of the law. So that, in order to make the statute answer the purpose for which it was designed, the offender must be complaisant enough to examine its terms carefully, and make his bills bear on their face its identical words, otherwise he need not hope to be convicted under it.

The law, as it now stands, corresponds with the act of 1835, with the exception of a single word, the omission of which does not, in the least, affect this question. The indictment, in the case of the *State* v. *Downing*, was framed under the act of 1825, and, notwithstanding that decision, with the omission of an unimportant word, that statute was re-enacted in 1845, with a reference to that decision. The act of 1835 was taken from that of 1825, the revision of 1835 adopting the course (as it is well known) of dropping all words deemed superfluous, and divesting the code, as far as practicable, of all unnecessary verbiage. Whether it was wise to change, in any way, the words of laws which were understood and approved, it is not for me to determine. The words of the act of 1825 are, " put in circulation any note, bill, check or ticket purporting or evidencing, or intending to purport or evidence, that any sum of money will be paid, &c. So here we have a legislative interpretation of the word " purporting," and that is, that it is " evidencing." According to this statute, purporting and evidencing are synonymes. Does " evidencing, " too, mean an exact copy ? I confess it is past my comprehension how the principle, which requires that, in some indictments, when you profess to give the purport of an instrument, you must set it out exactly, can affect the meaning of the word " purporting" in this or any other statute. Exact copy ! copy of what ? If you copy the note, the indictment will be bad, unless the party has been silly enough, in making his circulating medium, to adopt the very words of the law. So the statute is made a *felo de se* and destroys itself.