## AGNES EASTER, Respondent, v. BROTHERHOOD OF AMERICAN YEOMEN, Appellant.

### Kansas City Court of Appeals, June 2, 1913.

1. **LIFE INSURANCE: Fraternal Beneficiary Associations: Forfeiture.** The plaintiff sued as the beneficiary of one Easter to recover on an insurance policy issued by the defendant to her husband. Her husband was insured with the defendant on January 8, 1904, but failed to pay his dues for March, 1906, which by the terms of the policy *ipso facto* worked a forfeiture. In April, 1906, he tendered his dues but they were refused and he died about sixteen months later. *Held*, that as his contract gave him a specific, reasonable remedy, he should exhaust it before resorting to the courts, and his failure to do so should be treated as an abandonment of the policy.

2. ————: ————: **Proof of Authorization to Transact Business.** Where there is no proof that an insurance company is authorized to do business in this State as a fraternal beneficiary society, a contract of such insurance cannot be treated as falling within the scope of its laws of this State relating to such societies.

3. ————: ————: **Stipulations of Forfeiture.** A stipulation in a contract which provides that nonpayment *ipso facto* shall work a forfeiture without notice to the delinquent should be enforced.

4. ————: ————: **Illegal Assessment.** A policy of assessment insurance which is wrongfully declared forfeited on the ground of failure of the assured to pay an illegal assessment, should not be treated as abandoned by the failure of the assured to pay subsequent assessments.

Appeal from Jackson Circuit Court.—*Hon. A. O. Lucas,* Judge.

REVERSED.

*E. C. Corry* and *Ed. E. Aleshire* for appellant.

(1) The court erred in overruling defendant's demurrer at the close of plaintiff's evidence. Worth v.

Insurance Co., 64 Mo. App. 586-587; Hester v. Fidelity & Casualty Co., 69 Mo. App. 186; Insurance Co. v. Roger, 119 Ill. 485. (2) Our courts have uniformly held that instructions should not be given unless supported by substantial evidence. Instructions which are not based upon facts in the case and are calculated to mislead, although correct as abstract propositions of law, should be refused. There is no difference either between the rule as to instructions given in a civil case or criminal case. State v. Bailey, 57 Mo. 131; State v. Chambers, 87 Mo. 406; Chenoweth v. Sutherland, 129 Mo. App. 430; State v. Edwards, 203 Mo. 528; Neas v. Railroad, 138 Mo. App. 484; Crumley v. Tie & Timber Co., 144 Mo. App. 528.

*Fyke & Snider* and *E. W. Shannon* for respondent.

(1) Upon trial the policy was placed in evidence, then it was shown from the answer defendant admitted plaintiff to be the beneficiary named in the policy sued on which it issued, and admitted insured's death as stated in the petition. This made a prima facie case. Johnson v. Sovereign Camp W. of W., 119 Mo. App. 98; Mulroy v. Knights of Honor, 23 Mo. App. 466. (2) Waiver of nonpayment of premiums and making death proofs was not necessary to be pleaded because of the Missouri rule which has been followed since. St. Louis Ins. Co. v. Kyle, 11 Mo. 278; McCullough v. Ins. Co., 113 Mo. 606; McCullough v. Ins. Co., 65 Mo. App. 304; James v. Ins. Co., 148 Mo. 1.

JOHNSON, J.—The cause of action pleaded in the petition is on a policy of ordinary life insurance. It is alleged "that on January 8, 1904, for value received, defendant issued to Elmore W. Easter its policy of insurance . . . by which it promised to pay to Agnes Easter, plaintiff herein, the sum of two thousand dol-

lars upon the death of the said Elmore W. Easter
. . . that on August 10, 1907, the said Elmore W.
Easter died, and said Elmore W. Easter and this plain-
tiff have complied with all the conditions in said policy
required to be performed, etc.'' In the answer de-
fendant admits that plaintiff, who was the wife of the
deceased, is his beneficiary; that on January 8, 1904,
defendant issued to Elmore W. Easter a certificate of
membership and that Easter died on August 10, 1907,
but alleges that defendant was and is a fraternal bene-
ficiary society domiciled in Iowa and authorized to do
business in this State; that the death benefit certifi-
cate in suit is a fraternal beneficiary contract and had
become forfeited on April 1, 1906, by the failure of
Easter to pay the dues and assessments for the pre-
ceding month. The reply is a general denial. The
case was here on a former appeal of defendant from
a judgment recovered by plaintiff in the circuit court
and the judgment was reversed and the cause remanded
for another trial (154 Mo. App. 456). The subsequent
trial resulted in a verdict and judgment for plaintiff
for the full amount of her demand and again defend-
ant appealed.

There is no proof in the present record that de-
fendant was authorized to transact business in this
State as a fraternal beneficiary society and, conse-
quently, the contract in issue cannot be treated as fall-
ing within the scope of the laws of this State relating
to such societies. [Gruwell v. Knights & Ladies of Se-
curity, 126 Mo. App. 496.]

The proof discloses a contract bearing all of the
essential features of insurance on the assessment plan
and we shall construe the policy as one of assessment
insurance governed by the laws relating to that class
of life insurance contracts. [Art. 3, Ch. 61, Rev. Stat.
1909.] So construing it we reject the contention of
plaintiff that the constitution and by-laws of the de-
fendant which, by the terms of the policy, are ex-

pressly referred to and made a part of the contract, cannot be given such force and effect because of the provisions of section 6934, Revised Statutes 1909, prohibiting life insurance companies from making "any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued thereon." That statute which was enacted in 1907 (Laws 1907, p. 316) was plainly intended to apply only to old line policies and has no effect on assessment contracts.

Section 161 of defendant's constitution and by-laws which, as stated, were made a part of the contract, provided that a member "who shall fail to pay the regular monthly payment including his dues on or before the last day of each month . . . shall *ipso facto* stand suspended."

Section 162 forbade any correspondent of defendant charged with the duty of collecting dues and assessments from members of a local lodge "from receiving payment of arrearages from any member whose health at the time is impaired" on pain of his own expulsion from the society.

Section 148 required the monthly dues and assessments to be collected every month by the local correspondents and remitted to the chief correspondent "so that the same shall reach the office of the chief correspondent not later than the 10th day of the following month."

The chief office of defendant is in Des Moines, Iowa, and we shall assume that a payment made to the local correspondent at Kansas City would be in time to meet this last mentioned requirement if made on or before the 9th day of the month following that in which such payment was required to be made by the terms of section 161.

Section 142 provided that "a beneficiary member who has been in suspension less than sixty days may be reinstated . . . if in good health, by filing a

health certificate and the payment of all delinquent
dues and assessments.''

Easter did not pay the dues and assessments for
March, 1906. He went to the office of defendant in
Kansas City on April 3, 1906, stated to the correspond-
ent in charge that he had forgotten the matter and
offered to pay the full amount due. The correspond-
ent refused the payment on the ground that Easter was
afflicted with cancer, was delinquent (under section
161) since the payment should have been made on or
before the last day of March and that (under section
162) he had no authority to receive a payment in ar-
rears from a member whose health was impaired.
Easter departed and thereafter made no attempt to
be reinstated nor offered to pay any subsequent dues
and assessments. His death occurred sixteen months
later. The correspondent reported to defendant that
Easter ''tendered his money April 3d. By section 162
I refused to accept it.'' He testified that often he
permitted a member who appeared to be in good health
and who signed a health certificate to pay arrearages
at times that would enable him to send the money to
Des Moines by the tenth day of the month following
that in which the payment should have been made, but
that he had not allowed anyone whose health appeared
to be impaired, or who did not sign a health certificate
to pay in such manner    Further he stated:

''Q. And you thought and it was sufficiently ap-
parent to you that he was in a diseased condition, so
that you would not have accepted the health certifi-
cate from him if he had signed it, that is you would
not reinstate him? A. That would not have been
for me to decide. Q. It would not ? A. No, sir. Q.
Well, suppose he had signed and handed you a health
certificate, what would you have done? A. I would
have taken the money and sent the health certificate
to Des Moines with my report and explained to them

the conditions surrounding that health certificate and the man who signed it.''

In rebuttal plaintiff introduced evidence tending to show that at the time of the tender of the March payment Easter was in sound health and, therefore, that the correspondent should not have refused the tender.

The law does not look with favor on forfeitures but it recognizes the necessity of provisions in insurance contracts for the employment of that harsh method to enforce prompt payment of premiums or assessments. ''Indeed, it is difficult to perceive how any insurance company, whether old line, mutual or fraternal, could do business at all if it permitted its policies to remain in force indefinitely, after the assured had ceased to pay agreed premiums. Forfeiture for nonpayment is a necessary means to avert disaster to the enterprise and it is well settled that stipulations in the contract which provide that nonpayment *ipso facto* shall work a forfeiture without notice to the delinquent, should be enforced.'' [Gruwell v. Knights & Ladies, supra.]

The provision in the contract by which the policy became *ipso facto* forfeited by the failure of Easter to pay the March, 1906, dues and assessment on or before the last day of that month was valid and binding and if it be a fact that Easter was in bad health at that time, we do not perceive any good ground for holding that the custom, followed by the local correspondent, of allowing members who were in good health the benefit of the by-law which gave him until the tenth day of the following month to remit to the home office, may be enlarged to the advantage of a class of delinquents for whose benefit the custom was not intended and never had been used. If, on the other hand, Easter was in good health when he made the tender, as the evidence of plaintiff tends to show, the custom was for his benefit and the local correspondent was not justified in re-

fusing to receive the payment. The issue of the good or ill health of Easter at that time would be important if he had availed himself of plain and unmistakable rights his contract offered him in just such contingencies as this. The correspondent says he would have accepted the money had Easter signed a health certificate and would have referred the whole matter to the home office.

There is no reason appearing in the evidence to question this statement, but whether it is true or false, the fact still remains that Easter had the contractual right to be reinstated at any time within sixty days without penalty on proof of his good health and the payment of delinquent dues and assessments. Thus the contract, instead of investing the local correspondent with final authority in such matters, reserved such authority in the board of directors or other general officers. This is not like the case of Wayland v. Indemnity Co., 166 Mo. App. 221, wherein a majority of the court held that a policy of assessment insurance wrongfully declared forfeited on the ground of the failure of the assured to pay an illegal assessment should not be treated as abandoned by the failure of the assured to pay subsequent assessments, but is a case where the assured has failed to exercise a plain contractual right which, if exercised, presumably would have corrected any injustice done to him by a subordinate officer. In the Wayland case the assured had no reason to think that his act in tendering payment of subsequent assessments would cause the company to recede from a position sanctioned by final authority, while here, Easter knew that if he was in good health the wrongful act of the local correspondent could be corrected by resort to means the contract expressly afforded him.

The case, therefore, belongs to the class where the assured is held to be remiss for not availing himself of a reasonable and fair contractual remedy. Easter

had no right to give final effect to an act of a subordinate against which the contract gave him a specific remedy and in so doing he must be held to have abandoned the policy as righteously forfeited.

We said in the Wayland case that the rule applicable to fraternal societies compelling a member to exhaust the remedies offered him by the rules of the order for the correction of a wrongful suspension does not apply to assessment insurance where the so-called member is a member only in name and has no opportunity of appealing to the legislative body of a democratic organization for redress of his wrongs. But where, as here, his contract gives him such specific, reasonable remedy, he should exhaust it before resorting to the courts and his failure so to do should be treated as an abandonment of the policy. The judgment is reversed. All concur.