NANNIE MARVIN DESKIN, RESPONDENT v. UNITED STATES RESERVE INSURANCE CORPORATION, APPELLANT.[*]

Kansas City Court of Appeals.   June 27, 1927.

[*]Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2951, p. 969, n. 41; Insurance, 32CJ, section 245, p. 1139, n. 75; section 531, p. 1301, n. 99; section 557, p. 1311, n. 83; 33CJ, section 815, p. 96, n. 23; section 863, p. 130, n. 37; section 890, p. 151, n. 13.

1152

*Rosenberger, McVey & Freet* for respondent.

*Ernest D. Martin* for appellant.

WILLIAMS, C.—This is a suit on two life insurance policies, issued November 6, 1923, to John C. Deskin. Nannie Deskin, deceased's wife, is beneficiary.

Petition was in usual form pleading the policies, the death, etc. The answer was a general denial and the answer further averred that the assured executed a note to cover the first annual premium on the policies. That the note was not paid, therefore, the policies were cancelled and lapsed for failure to pay the premium note when due. The reply denied the provision authorizing the cancellation or providing for lapse, forfeiture or cancellation by reason of the non-payment of note or notes for the first year's premium. The reply further pleads a waiver in the following terms:

"If there was any forfeiture or lapse or right of cancellation of said policies or insurance or either of them by reason of the non-payment of any premium note or notes executed by the assured, John Cyrus Deskin, that then such lapse or forfeiture or cancellation or right of cancellation was waived by the defendant by giving and sending notice to the assured on each of the policies in suit; giving notice of the maturity of the two annual premiums on each of said policies maturing November 6, 1924, and demanding payment, whereby defendant elected to and did treat and continue said policies and each of them in full force and effect and did waive any default, lapse, or forfeiture by reason of the failure or alleged failure to pay any premium note."

The policies insured the life of John C. Deskin. The assured died October 15, 1924. Notice of death was given and a request for forms upon which to make proof of death. The company denied liability. Proof of death was duly furnished. There seems to be no difference in the forms of the policies in the two counts. The policies provide:

"United States Reserve Insurance Corporation, Kansas City, Missouri, hereby insures John Cyrus Deskin of Kansas City, State of Missouri (herein called the insured), for the maximum sum of $5000, and immediately upon receipt and approval of due proofs of the death of the insured while this policy is in full force, will pay to Nannie Marvin .Deskin, wife, if living; otherwise to the executors, administrators or assigns of the insured, $1000, if death occurs during the first year, and in addition thereto, eighty per cent of the premium paid hereon. . . .

"This insurance is granted in consideration of the application herefor and of the annual premium of $188.60 and of the payment of a

like amount on or before the 6th day of November in each of the succeeding nineteen years, or until prior death of the insured. . . .

"The provision and benefits stated on the succeeding pages hereof are made a part of this contract as fully as if recited at length over the signature hereto."

The material part of the policy conditions read as follows:

"Payment of Premiums and Grace Period

"Premiums are payable annually in advance. . . .

"Except as herein provided, the payment of a premium or installment thereof shall not maintain the policy in force beyond the age when the next premium or installment thereof is payable. If any note shall be given, for any premium, this policy, except as to guaranteed values, shall not be in force when said note is past due and not fully paid.

"All premiums are payable in advance at the home office or to an agent of the corporation, signed by one or more of the following officers, viz., president, vice-president or secretary, and counter-signed by said agent.

"If any premium is not paid on the date when due, or within the month of grace, and this policy has not been surrendered, the Corporation will reinstate the policy as of said due date at any time thereafter, upon evidence of insurability satisfactory to the Corporation and payment of all arrears of premiums with six per cent compound interest, together with the payment, or reinstatement, of any indebtedness on this policy on said due date, with interest."

"Entire Contract

"This policy and the application herefor taken together, constitute the entire contract.

"General Provisions

". . . (3) This policy takes effect and becomes binding upon the Corporation only upon actual delivery thereof to the applicant while in life and good health and the payment in cash to the Corporation of the first annual premium while in good health."

The application which is attached is as follows:

". . . I hereby agree that the Corporation shall incur no liability until the first premium has been paid and until this application has been approved and policy issued thereon by the Corporation during my lifetime.

"I understand that the Corporation will not consider any application unless a deposit equal to the full amount of the first premium be made contemporaneously with the signing of the application. It is the purpose of the applicant to complete the foregoing application now by (a) making the said deposit and (b) having the medical examination made today, and accordingly, I hereby declare that I have this day *paid* to ———————— $188.60 as follows: a *note*, purporting

to be the first annual premium for the proposed insurance on my life. I hold binding receipt therefor made up without alteration on the receipt form, detached from, and corresponding in date with this declaration. I have carefully read said binding receipt and agree to its terms and condition.

"Dated at Kansas City, Missouri, this 6th day of November, 1923.
"JOHN C. DESKIN.
"Signature of Agents as Witness.
"SMITH & WATSON."

It will be noted that there is no provision for cancellation.

The President of the Company testified that a receipt given was on the regular form when the premium was paid.

A receipt upon the regular form was issued to deceased.

The receipt was as follows:

"Received of John C. Deskin, a note for the sum of $188.60, purporting to be the first annual premium under application . . . this day made to the United States Reserve Insurance Corporation.

"This receipt is issued upon the following terms, to-wit: . . . (b) The payment hereunder shall be held by the Corporation as a deposit merely and not as premium payment until the application and examination shall have been approved or disapproved by the Corporation at its home office. (c) The Corporation shall incur no liability under the application unless nor until said application and the examination shall have been received by the Corporation at its home office, nor unless nor until the said application and examination shall have been approved by the Corporation at its home office for the amount of the premium stated in said application.

"(d) If the application be approved by the Corporation and the policy be issued for the amount of the premium as aforesaid, then said policy shall be in force from date of application.

"(e) If the application be disapproved by the Corporation, *payment* hereunder will be returned to the applicant upon the surrender of this receipt to the Corporation at its home office. . . .
"Dated this 6th day of November, 1923.
"C. A. SMITH, Agent."

The evidence shows that when the application was made a promissory note for $188.60 was given. The note was signed by John C. Deskin, payable to the order of "himself." The note was endorsed on the back "C. A. Deskin." Thus the note was made payable to bearer. These notes were renewed on January 23, 1924; and on April 22, 1924, the two notes were made into one note which was given for $380.20. J. B. Rutherford, Superintendent of agencies, was instrumental in having the loan renewed. This last note was not paid.

When the notes were received they were entered upon the records under the heading "Policy Loans." At the bottom of the record

is a memorandum "Cancelled on July 25, 1924, for nonpayment of note." In the same record the following appears:

"Premium paid 11-6-23, note $188.60."

On July 15, 1924, a letter was written to deceased as follows:

"We desire to call your attention to the fact that your note for $380.20 representing the first premium on your two policies of insurance has not been paid, which no doubt has escaped your notice. This premium should be paid on or before July 22, 1924, in order to put your policies in full force. Hoping you will promptly remit, we remain, . . ."

On July 25, 1924, the Company again wrote Mr. Deskin as follows:

"Your policies of insurance Nos. 876 and 1103 were this day cancelled for nonpayment of the first premium due thereon, represented by your note for the sum of $380.20, as we are authorized to do by the terms of your policies. However, this does not relieve you from paying the earned premium due and unpaid, and you are still liable to this company for it. Under the circumstances we suggest that you call at once at this office, straighten matters up, and make arrangements to reinstate your insurance, as you cannot afford to be without protection. Awaiting your prompt action, we remain, etc."

Neither of these letters was answered.

A few days prior to the death of the insured, the company mailed notice of the second annual premium upon each of the policies. These were on the regular premium notice form. The assistant secretary of the company testified that it was the custom after the premium for the first year was paid to notify policy holders of the time to pay premiums thereafter.

There was further evidence showing the reasonable value of attorney's fees. The verdict was—

"One thousand dollars on each policy, plus *pro rata* premium as provided by the policy of $160.54 with interest and $175 attorney's fees, making a total of $2828.52 upon both counts."

The defendant, after an unsuccessful motion for a new trial, brings the case here on appeal.

There seems to be no case reported with facts similar to the case at bar.

Many authorities are cited by the appellant upholding the proposition that if a note is given for a premium and the note is not paid, the policy will lapse. There is no controversy as to that question and if the note for $380.20 was given for the first year's premium, the defendant is entitled to a directed verdict.

However, the company had a right to accept the assured's note as the equivalent of cash (Dobyns v. Ben. Ass'n, 144 Mo. 95; State v. Page et al., 19 Mo. 213; State v. Pullens, 81 Mo. 387, 1. c. 392); or

they had a right to accept the notes as policy loans, and if as policy loans the nonpayment of the notes would not forfeit the policy. The company in their records recited the notes were policy loans; they issued a receipt purporting to be the first annual premium; they renewed the notes not for the exact amount of the premiums. We think under this evidence it was a policy loan and not a premium payment. The receipt provides that a note "purporting" to be the first annual premium has been paid. In State v. Page et al., 19 Mo. 213, l. c. 217, our Supreme Court said: " 'Purport' means the substance of an instrument." The word "purporting" has been used to mean "appearing on the face of the instrument" (Van Horne v. State, 5 Ark. 349, 353; State v. Harris, 27 N. C. 287, 294) and defined by Webster's International Dictionary as "Intending to show, signify, mean, imply."

This receipt issued by the Insurance Company then meant that the note was taken as appearing upon the face or intending to show payment of the first premium. Subsequent thereto they notified Mr. Deskin that his policy payment thereafter would be due. The case of Dobyns v. Ben. Ass'n, 144 Mo. 95, we think is in point on the question of the receipt.

The appellant denies that the case is in point as it is not a "premium note case." However, under our view, this is not a "premium note case" but is a policy loan. Again, the taking of the note for $380.20, a sum which is purely arbitrary as far as the record shows, was making a new contract and an abandonment of the old contract. [Carmen v. Harrah, 182 Mo. App. 365, l. c. 376; Bibler v. Iuchs, 275 S. W. 779, l. c. 782.]

The appellant complains of trial court's instructions 1 and 2 which were a directed verdict for the plaintiff. Under our view, as heretofore expressed, these were the only instructions that could have been given. The evidence was all practically in writing, and it was but an application of the law to the written evidence.

Appellant next contends that competent evidence was refused in striking out the answer of Lula M. Crawford. The record shows, however, that the witness proceeded with her answers.

Again it complains that it was not allowed to cross-examine the plaintiff as fully as it desired. However, the attempted examination discloses that it had to do with the contents of the policy and conversations with her deceased husband, none of which could have constituted a defense.

Again it complains that he was not allowed to prove that if notice was sent it was a mistake. The court ruled that this could be shown by competent testimony but that the testimony was not competent.

This brings us to the question as to whether or not attorney's fees should have been allowed. Appellant contends that it was organized under Article 4, Chapter 50, Revised Statutes 1919, on the stipulated premium plan, subject to the provisions of that law. The respondent in answer to that says there is no proof as to the organization of the Company. The only proof in the record is that the policy itself recites: "This corporation is chartered under Article 4, Chapter 50, Revised Statutes 1919 of Missouri, on the 'Stipulated Premium Plan,' subject to provisions of said law."

The courts hold that it matters not that the certificate indicates on its face that it was issued by a certain kind of an association but it is a matter that must be pleaded and proven. [Sallie B. Gruwell v. National Council Knights and Ladies of Security, 126 Mo. App. 496; Baltzell v. Modern Woodmen, 98 Mo. App. 153; Logan v. Insurance Co., 146 Mo. 114.]

This is not in conflict with the holding that if the policy itself sets out the manner of doing business the court will look to the face of the policy to determine the question. [Easter v. Brotherhood of American Yeoman, 157 S. W. 992.]

From what has been said it follows that the quotation from Gruwell v. Knights and Ladies of Security, supra, l. c. 502, is in point. The quotation is: "It follows that defendant must be denied the benefit of the laws and rules relating to fraternal orders and that the certificate before us must be treated as one issued by a corporation of another class."

The Company takes the position that it acted in good faith and had a right to contest the issue of fact. The question presented in this case has not, prior to this case, been before the courts on exactly the same set of facts. We think the law does not impose the penalty in cases about which there might be a difference of opinion or in cases where the law upon the facts as shown in the record, is not well settled. [Aufichtig v. Columbia Ins. Co., 298 Mo. 16; State ex rel. v. Life Ins. Co., 303 Mo. 608-621; Agee v. Ins. Co., 213 Mo. App. 693-700.]

We think on this record attorney's fees should not be assessed.

The judgment will be affirmed as to all else but the attorney's fees and reversed as to that. It is so ordered. *Frank, C.,* concurs.

PER CURIAM:—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.