## VAN HORNE *vs.* THE STATE.

The term forgery, has a fixed legal meaning. It is the fraudulent making or alteration of any writing, to the prejudice of another man's rights.

Legislative acts, *in pari materia*, are to be construed together ; and the term person, being of general signification, includes artificial, as well as natural persons.

It is unlawful for any corporation in this State, to issue change tickets, and if they do, the corporation is liable for the penalty imposed by law.

By law, it is a crime to issue change tickets, and the statute clearly creates, and defines the offence of forging or counterfeiting them.

Counterfeiting or forging change tickets or corporation notes, is clearly an offence defined and punishable, by law.

The word "purport" in the act, means, that which appears on the face of the instrument.

It is immaterial whether the forging be of a bill, genuine or binding—if the counterfeiting be proved, it is sufficient.

THIS was an indictment for forging and counterfeiting the corporation notes, or change tickets, issued by the corporation of Little Rock, determined in the Pulaski Circuit Court, at May term, 1843, before the Hon. JOHN J. CLENDENIN, one of the circuit judges. The indictment charged Trowbridge, Whitmore, and Van Horne, that they "feloniously did forge and counterfeit, the counterfeit resemblance and imitation of certain notes and instruments which circulated, by usage as currency, at the time of said forgery, purporting to be of the corporation of the city of Little Rock," &c., &c., "with intent to deceive and defraud the corporation of the city of Little Rock, contrary," &c. Copies of several of the counterfeit tickets are, with

Van Horne *vs.* The State.

appropriate averments, set out, word for word, in the indictment. Van Horne severed, and pleaded *not guilty.* The Attorney General entered a *nol. pros.* as to Trowbridge and Whitmore, because other indictments were pending against them for the same offence. At the trial, Van Horne was, by the jury, found guilty, and that he be confined in the jail and penitentiary house six years and six months; whereupon he moved for a new trial, was overruled, and he excepted, embodying the whole of the evidence in his bill of exceptions. The case was brought here by writ of error. The points relied upon, are fully stated in the opinion of the court.

The case was argued here by *Cummins & Jordan,* for plaintiff, and by *Hempstead, Att'y Gen., pro. tem.,* contra.

*By the Court,* LACY, J. [ At July term, 1843. ] There are but two principal questions made and relied on to reverse the judgment of the court below. Their decision necessarily disposes of all the minor points in the cause. It is said that the indictment charges no offence against the prisoner; and if it does, there is no law punishing him for counterfeiting the change tickets of the corporation of the city of Little Rock. The indictment pursues not only strictly but literally the words of the act; and if it charges no offence, then the law creates none. The indictment, which is a transcript of the statute, charges the prisoner "with forging and counterfeiting the false resemblance and imitation" of certain small notes, purporting to be of the corporation, and which circulated as money. The indictment would surely have been good, had it merely alleged the forging or counterfeiting of the notes. If this be true, will the addition of terms, which are only expletives, and which at most, is but unmeaning tautology, vitiate it? Unquestionably it will not. The insertion or subtraction of the words "false resemblance or counterfeit imitation" in no manner affects the meaning of the other members of the sentence; and those distinctly and positively assert the charge of forgery. The term forging, has a fixed legal meaning. It is the fraudulent making or alteration of any writing to the prejudice of another man's rights, or a false making, *malo animo,* of any written

instrument, for the purpose of fraud or deceit. 4 *Black. Com.* 247. 2 *East P. C. C.* 19, § 1, *p.* 852. *Rex vs. Parker & Brown,* 2 *Leach* 785.

Now to forge or counterfeit the instrument is to create or make it. The indictment has laid the charge against him, with these express words of forging or counterfeiting, which is according to all the adjudged precedents on the point.

It is argued that, as the charter of the corporation of the city of Little Rock, gives no authority to emit a paper currency, and that as the issues of these change tickets or small notes are expressly forbidden by a positive statute, it necessarily follows that such emission is to be considered absolutely void; and therefore it is no offence to counterfeit them. The legislature passed three acts in relation to this subject, and they are all *in pari materia,* and are to be construed together. The first act was in February, 1838, which made the drawer, issuer, or indorser, of these change tickets, responsible to the holder or owner of them, by an ordinary suit before a justice of the peace, and directed judgment to be given for the full amount expressed on their face. The second act, which was approved Novem ber, 1837, forbids all persons from issuing or putting in circulation these change tickets, as a currency, under the penalty of being indicted and punished with fine and imprisonment. The third section of this act declares, if any person or company shall circulate such issues, they shall forfeit the sum of fifty dollars for the commission of such offence, to any one who shall sue for the same in an action of debt. The fourth section prohibits any bank from circulating their notes in this State of a less denomination than five dollars. The penitentiary code makes it felony for any person to counterfeit the lawful issue of any bank or corporation, and they are also held equally guilty if they counterfeit notes or bills "purporting to be of any bank or corporation." It is said, as the term corporation does not occur in either of the acts prohibiting the issuing of these small tickets, that their emissions are not necessarily excluded from circulation. The term person, is used in a general signification, and includes artificial persons as well as natural ones; and as a general rule, this the authorities conclusively establish. The evil to be prevented, was the

issue and circulation of small notes as a paper currency; and this the legislature intended to extirpate. How could they cure this shameful and intolerable practice? If natural persons are only to be held responsible and punished for these offences, then indeed was the real mischief apprehended and designed to be guarded against, scarcely touched, and not at all remedied. For it is evident that the danger and temptations were far greater from the worthless issues of corporations, than from individuals. It may be safely conceded in the present instance, that if even the word "persons" would not in an unrestricted sense include corporations, still there are other portions of the act that clearly show such to be its meaning. In the third section of the act of November, 1837, the word company is used, and for passing or receiving such tickets, they are answerable by way of damages, to any person suing them in a fine of fifty dollars. Now what does the word "company" mean? Does it not signify corporations, and was it not intended, like the word persons, to restrain and punish them, as well as others, from issuing or putting into circulation such spurious currency? Again, the fourth section prohibits any bank from circulating her notes of a less denomination than five dollars, and makes them answerable for such offence, under the penalty of the third section. Why forbid the circulation of the small notes of banks lawfully authorized to emit them, unless it was intended to include corporations, and cut up the evil by the roots? The answer seems to us to be conclusive upon this point of the case. If bank notes, which are deemed change tickets, will not be allowed to circulate as a currency, then as they emitted by corporations, the very words, as well as the spirit of the act, and the evils to be remedied, demonstrate that both the statutes referred to, apply directly to corporations. It is certainly unlawful for any corporation to issue change tickets, and it is equally true, that if they do, the corporation is liable for the amount of such issues, and forfeits the sum of fifty dollars for passing or receiving them. And besides these remedies, the persons of the corporation, who issue or put them in circulation or sign them, are answerable upon indictment in the penalty of fine and imprisonment.

Van Horne *vs.* The State.

The issues, then, are not void, as it is contended, or even voidable; for all these several remedies are given for the purpose of suppressing such a currency. And the penitentiary code comes in aid of the provisions of these acts; for it makes it felony in any person to counterfeit any bank bill, note, or draft, and the like, of any corporation, or "purporting to be of any corporation." This act clearly creates and defines two offences: first, the forging of the notes of corporations having authority to make such issues; and secondly, the counterfeiting the notes purporting to be of corporations having existence or no existence. The indictment charges the offence to consist in forging small notes or change tickets, purporting to be of a corporation, and the word "purport" imports what appears on the face of the instrument; and so the doctrine has been constantly holden ever since Jones' case, reported in Douglass; and Justice STORY, in the *United States vs. Turner*, 7 *Peters*, lays down the rule, and fully adopts it, and then significantly adds, it is wholly immaterial whether the forging be of a bill genuine or binding on the corporation. It will be borne in mind, that in the case referred to, the prisoner was indicted for counterfeiting a note, issued by the president, directors, and company of the Bank of the United States, and the bill produced on the trial was not signed by the president and cashier of the bank, but by two persons, who were merely the president and cashier of an office of discount and deposit of the bank. The bill, on its face, purported to be signed by the president and cashier of the bank; and this proof was held sufficient to sustain the indictment, and the prisoner was accordingly convicted upon it. And all the English authorities on the subject of forging clearly support and justify the doctrine. 2 *East P. C. ch.* 19, *sec.* 44, *p.* 950. 2 *Russell on crimes, b.* 4, *ch.* 32, *sec.* 1, *p.* 341; 2 *Ed.* And it is immaterial whether the forged instrument be counterfeited in such a manner, that if it were true, it would be of value or not. This was expressly ruled in *Deakins' case*, 1 *Siderf. Rep.* 142. 1 *Hawkins P. C. ch.* 70, *sec.* 7.

Upon a review of the whole case, we are of opinion that the words and policy of the acts themselves, as well as the intolerable mischief attempted to be remedied, bring the prisoner's case clearly within

the penalties of the penitentiary code, and his conviction was fully warranted by the law and upon the proof.

Let the judgment be in all things affirmed.

A petition for re-consideration was filed, and at January term, 1844, overruled.