[Civ. No. 6194.   Fourth Dist.   Mar. 16, 1960.]

RICHARD RAKOW, Respondent, v. DELIGHT V. SWAIN, as City Clerk, etc., Appellant.

Thomas G. Duffy, City Attorney (El Cajon), and Donald W. Smith, Assistant City Attorney, for Appellant.

Condra & Lesh and Crandall Condra for Respondent.

SHEPARD, J.—Appeal from a judgment granting a peremptory writ of mandate requiring appellant, hereinafter called "Swain," to receive as filed certain petitions for recall of El Cajon city councilmen Carl R. Tuttle and Walter E. Boortz, to examine the same, ascertain whether they are signed by the requisite number of voters, attach to each petition a certificate showing the result of her examination and serve a copy of the certificate forthwith on the petitioner. Said judgment further ordered that if said clerk's certificate showed the petitions to contain an insufficient number of signatures, a supplemental petition may be filed within 15 days from the date of certificate of insufficiency.

It appears from the record that the respondent, hereinafter called "Rakow," caused to be circulated in the form and manner required by law, petitions for recall of the above named councilmen, and on Friday, July 3, 1959, presented said petitions to Swain, the city clerk, for filing. Swain accepted possession of said petitions and gave to Rakow a receipt for each of them, stating in the receipt, *inter alia*, "If, upon examination, petition is found on its face purportedly to have appended to it signatures of voters in the required numbers, in compliance with Article I of Chapter 3 of Division XII of the Elections Code, the same will be accepted for filing and deemed filed as of the above time and date." On Monday, July 6, 1959, Swain by mail returned said petitions to Rakow, appending to each of them the statement: "This petition is not acceptable for filing as it does not purport on its face to have appended to it signatures of voters in the required number." The petition relating to Tuttle contained 2,888 signatures.

The petition relating to Boortz contained 2,895 signatures. The total number of registered voters as of July 3, 1959, was 11,962.

Rakow contends that under the law it was the duty of Swain to file said petitions, to then examine the signatures to see whether or not there was a sufficient number of valid signatures to entitle the recall election to proceed, and to then certify as to the sufficiency or insufficiency, that if there were an insufficient number of valid signatures, Rakow was then entitled to present within 15 days from the date of such certificate, supplemental petitions.

Swain contends that under the law she did not have the right to file said petitions in the legal sense, unless the petitions did, in fact, contain a sufficient number of signatures (valid or invalid) to show on the face of each petition that the total number of signatures thereon was equal to or in excess of 25 per cent of the total number of actual registered voters as of the date the petitions were offered for filing, to wit, July 3, 1959.

The resolution of the question thus presented involves the proper interpretation of sections 11101 and 11111 of our Elections Code. Those sections, as they read on July 3, 1959, are as follows:

"11101. Recall petition. A petition demanding the recall of the officer sought to be recalled shall be filed with the clerk of the legislative body of the city. The petition shall be signed by not less than 25 percent of the voters of the city." (Stats. 1957, ch. 1316, p. 2637.)

"11111. Number of signatures; examination; certificate; supplemental petition. *In order to be acceptable for filing the petition must on its face purport to have appended to it signatures of voters in the required number.* Within 15 days from the date of filing the petition, the clerk shall examine and from the records of registration ascertain whether or not the petition is signed by the requisite number of voters. He shall attach to the petition his certificate showing the result of his examination. If the clerk's certificate shows the petition is insufficient, a supplemental petition, in form a duplicate of the original petition may be filed within 15 days of the date of the certificate of insufficiency." (Italics are ours.)

The word "purport" means "to convey, imply, or profess outwardly, as one's (esp. a thing's) meaning, intention, or true character; . . . as, a letter that *purports* to express

public opinion; a law that *purports* to be in the interest of morality; . . . ." (Webster's International Dictionary, 1953 ed.) ■ The word "purport" as such word is used in statutes describing the meaning of an instrument in writing signifies to show, mean, signify or appear on its face. (*Van Horne* v. *State*, 5 Ark. 349, 353; *State* v. *Harris*, 27 N.C. 287, 294; *Deskin* v. *U. S. Reserve Ins. Corp.*, 221 Mo.App. 1151 [298 S.W. 103, 106]; *Lacy* v. *State*, 33 Okla. Crim. 161 [242 P. 296, 297]; *Brownlow* v. *Wunsch*, 103 Colo. 120 [83 P.2d 775, 781].) ■ "The 'purport' of an instrument means the substance of it as it appears on the face of the instrument." (Black's Law Dictionary.) The attorney general of the State of California, in an opinion heretofore rendered as to the meaning of section 11111, has ruled that it requires the petition when presented to the clerk to bear the number of signatures (valid or invalid) amounting to at least 25 per cent of the total number of registered municipal voters of the city at the time the petition is presented to the clerk. (33 AGA 4.)

Rakow contends that such an interpretation makes the statute impractical in actual operation because there were at the time, in accordance with the common practice of the registrars of voters throughout California, several field deputy registrars within the city of El Cajon whose books would not be immediately available on a given date to ascertain the exact total of registered voters by adding their unreported registrations to the main office of the registrar of voters, and that the more reasonable method and the one intended by the statute would be to use the total number of registered voters in the last municipal election as the criterion. He quotes from *Reites* v. *Wilkerson*, 99 Cal.App.2d 500, wherein the court said at pages 502-503 [222 P.2d 81]:

"The courts are ever mindful of the desirability of having recall petitions presented to the people through election without delay or excessive expenditure of time, money and effort. (Citation.) And legislation affording the people a right to initiate legislation, repeal legislation or recall public officials is to be given the same liberal construction as that extended to election statutes generally."

He further quotes from *Reites* v. *Wilkerson*, 95 Cal.App.2d 827 [213 P.2d 773], wherein the court, after stating that the clerk is the exclusive judge of the sufficiency of petitions, goes on to say, at page 829: "Of course, the duty of the city clerk is

to be performed impartially and if done fraudulently or arbitrarily, his action may be controlled by mandamus.'';

And quotes from *Ley* v. *Dominguez*, 212 Cal. 587 [299 P. 713], as follows:

" ' . . . to protect the people of this state in the exercise of this reserved legislative power, statutory or charter provision dealing with the referendum should be afforded the same liberal construction afforded election statutes generally. . . .

" ' . . . It must be remembered that his [the city clerk's] duties are purely ministerial and not judicial. Under the law, he should exercise his powers and perform his duties in such a manner as will, whenever possible, protect rather than defeat the right of the people to exercise their referendary powers.' ''

Rakow further cites the cases of *Tilden* v. *Blood*, 14 Cal.App. 2d 407 [58 P.2d 381], and *Ley* v. *Dominguez*, *supra*, on the subject of the impartiality of the city clerk's position, his ministerial function and his control by mandate, all of which are in point in that respect, but it must be noted that in each of these cases the petitions, subject of judicial cognizance therein, did, in fact, on their face, contain far more than the number of signatures (valid or invalid) required. They therefore are of no assistance except in the reiteration of well-recognized principles of law.

Rakow also cites *People* v. *Pearson*, 111 Cal.App.2d 9 [244 P.2d 35]; *Cox* v. *Tyrone Power Enterprises*, 49 Cal.App.2d 383 [121 P.2d 829]; and Government Code, section 6200, on the subject of public document filing and retention. The question here, however, is not so much a matter of public document filing as whether or not the petitions were entitled to be filed. If the documents here in question were not entitled to be filed, the physical act of filing in a case of this kind would be a mere nullity since the filing alone could not give to them a force which their contents did not impart to them.

Respecting the total number of registered voters in the city of El Cajon on July 3, 1959, Swain alleged that such number was 11,962 voters. This fact was nowhere disputed by Rakow. Implicit in the entire proceeding is the acceptance by both court and counsel that this number was correct and that the court might take judicial notice thereof:

"THE COURT: Are you satisfied with the state of the record now? Mr. Doerr raised something here concerning the number of registered voters. I suppose that's something of which the Court may take judicial notice?

"MR. CONDRA: I think so.

"Mr. DOERR: It's a public record.

"Mr. CONDRA: As of any date?

"Mr. DOERR: I think so.

"THE COURT: So we don't have any problem there."

Likewise in the briefs of counsel and in the oral arguments on appeal the entire case was presented on the assumption that this figure was correct. It is not necessary therefore for us to here pass on the question of whether or not the court properly could have taken judicial notice thereof.

Regarding such total number of voters registered in El Cajon on July 3, 1959, the burden of proof was on Rakow to establish the allegations of his petition. A necessary element of his cause was information to the court establishing that number. Without such number there would be insufficient evidence to support the findings of the court, regardless of which interpretation we might give the statute here under question. However, it is apparent from the record that both parties and the court heard the entire matter on the undisputed information that the total number of registered voters as of July 3, 1959, was 11,962. Simple arithmetic makes clear that the number of signatures on each petition was less than 25 per cent of said total of registered voters.

We agree with the opinion of the attorney general that the language of the statute unequivocally demands that the total number of signatures (valid or invalid) required to be contained in the petition must equal 25 per cent of the total number of registered municipal voters of the city at the time the petition was presented to the clerk.

The provisions of said section 11111 clearly demand that there be contained within the petition a total number of signatures (valid or invalid) that will show *on its face* that it does contain the required 25 per cent. The mere fact that this places the burden upon the person presenting the petition to ascertain before he presents such petition for filing what the total number of registered voters of the city in fact *is*, does not obviate the plain wording of the statute. In fact, it would appear as a practical matter that a petitioner under this statute might find it far safer to secure some signatures in excess of 25 per cent of the total number of voters shown at any given moment in the main office of the registrar, because of the possibility of there being outstanding unreported registrations in the hands of field deputy registrars. Most assuredly a petitioner under these circumstances cannot safely present a petition for recall without first checking

with the registrar of voters to find out what the total number of registered voters is in a municipality immediately prior to offering his petitions for filing. This embarrassment is inherent in the statute as written. Whether the Legislature gave any thought to this problem, we cannot know. We can only interpret the statute as it is written. If Rakow feels critical of the statute as written, his criticism should be addressed to the Legislature and not to us. ▇▇▇ Criticisms of policy, wisdom or technique inherent in any legislative enactment "are matters with which the courts have no concern, such arguments being proper ones to address to the legislature for its determination." (*Baertschiger* v. *Leffler*, 36 Cal.App. 2d 208, 213 [97 P.2d 501].)

It being clear that each of the petitions contained less than the 25 per cent of registered voters required by statute, neither of them was entitled to be filed. This being so, the actions of Swain were legally correct.

The judgment is reversed.

Griffin, P. J., and Coughlin, J., concurred.