[Civ. No. 26216. First Dist., Div. Three. Sept. 24, 1970.]

CANDLESTICK PROPERTIES, INC., Plaintiff and Appellant, v.
SAN FRANCISCO BAY CONSERVATION AND DEVELOPMENT
COMMISSION et al., Defendants and Respondents.

558

560

## COUNSEL

Quentin L. Kopp and John G. Clancy for Plaintiff and Appellant.
Brobeck, Phleger & Harrison and Howard N. Ellman as Amici Curiae on behalf of Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Clayton P. Roche and E. Clement Shute, Jr., Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**CALDECOTT, J.**—Appellant, Candlestick Properties, Inc. (Candlestick) filed an application with the San Francisco Bay Conservation and Development Commission of the State of California (BCDC or Commission) for a permit to fill a parcel of land. After hearings the permit was denied. Candlestick then filed an action with the San Francisco Superior Court seeking a review of BCDC's action by way of a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5 and, in the alternative, damages for an alleged taking of its property without just compensation. The petition for the writ of mandate was denied and a demurrer without leave to amend was sustained to the cause of action for damages. Candlestick has appealed from the judgment.

Appellant is the owner of a parcel of land submerged at high tide by the waters of San Francisco Bay. The parcel cost $40,000 and was acquired in 1964 as a place to deposit fill from construction projects. The parcel is located within the boundaries of the Hunters Point Reclamation District, which was created by the Legislature in 1955. (Stats. 1955, ch. 1573, p. 2855; [West's] Water Code Appendix § 78-1 to 17.) The parcel is adjoined by other parcels which have either been filled or are in the process of being filled. Appellant's parcel is not navigable at high tide and contains the remnants of ship hulls. According to appellant the record establishes that the property has no value except as a place to deposit fill and as filled land. Respondents dispute the accuracy of this contention and indicate that there is no information in the record relative to alternative uses of the property, such as dredging for some water-related use or partial filling of the parcel for some water-related use instead of Candlestick's proposal to totally fill the property with demolition debris.

Appellant applied for the fill permit required by the City and County of San Francisco on August 20, 1965, and it was granted on September 7, 1965. Appellant then applied to the BCDC for a permit to fill the property. There is a question as to the date the application was filed. The material

to be used was to be debris from demolition projects in the City and County of San Francisco.

The Commission heard the application of Candlestick at its meetings on January 5, 1967, and January 20, 1967. The application was denied by the Commission on January 20, 1967. Following this decision appellant commenced these proceedings.

■ Appellant contends, and respondents agree, that the legislation creating the BCDC did not repeal the Hunters Point Reclamation District Act by implication. Appellant maintains that the two legislative declarations should be reconciled so that the Hunters Point Reclamation District Act "constitutes a specific declaration that fill within the Hunters Point Reclamation District will not adversely affect the comprehensive plan" being prepared by the BCDC. Under appellant's approach the BCDC would be required to grant permits for fill projects within the district established by the Hunters Point Reclamation District Act. As stated by appellant: "a specific legislative declaration that certain bay land should be filled is a legislative statement that filling that particular land could not affect the comprehensive plan being prepared by the Commission for the entire Bay. . . . Under that analysis the Commission would have jurisdiction to pass upon fill permits within the District but could not deny them unless, for example, the composition of the proposed fill (not involved in this case) was such that it might adversely affect the water quality of the Bay or the fish and wildlife therein."

Respondents, however, contend that the powers of the Hunters Point Reclamation District are not involved in this case. As indicated by respondents, the Hunters Point Reclamation District Act gives the *district* the power to reclaim and protect the lands within the district and to fill the lands within the district in private ownership. (Water Code Appendix § 78-9.) The act states: "The district may fill the lands of the district in private ownership . . . and, to that end, may, if necessary, obtain the right to do so by purchase, by agreement with the owners thereof, by condemnation or other legal means." (*Id.*) The application to the BCDC in this case came from a private entity, Candlestick. There is nothing in the record of this case which indicates that the Hunters Point Reclamation District has determined to fill Candlestick's parcel by agreement or condemnation. Thus, the situation presented is one in which the owner of private land, which happens to be located within the Hunters Point Reclamation District, has applied to the BCDC for a permit to fill that land. Clearly, this situation does not raise an issue concerning the powers of the reclamation district as opposed to those of the BCDC. Therefore, it is not necessary to attempt to reconcile the effects of the two acts.

However, if construction of the two acts is required, it is clear that the McAteer-Petris Act controls. The Supreme Court in *People* ex rel. *S.F. Bay etc. Com.* v. *Town of Emeryville,* 69 Cal.2d 533 at pp. 544-545 [72 Cal.Rptr. 790, 446 P.2d 790] stated: "The 'objective sought to be achieved' by the McAteer-Petris Act is depicted with remarkable clarity. In the preamble the Legislature describes the public interest in the San Francisco Bay: 'The Legislature hereby finds and declares that the public interest in the San Francisco Bay is in its beneficial use for a variety of purposes; that the public has an interest in the bay as the most valuable single natural resource of an entire region, a resource that gives special character to the bay area; that the bay is a single body of water that can be used for many purposes, from conservation to planned development; and that the bay operates as a delicate physical mechanism in which changes that affect one part of the bay may also affect all other parts. It is therefore declared to be in the public interest to create a politically-responsible, democratic process by which the San Francisco Bay and its shoreline can be analyzed, planned, and regulated as a unit.' (Gov. Code, § 66600.)

"In the next section the Legislature stresses the dangers inherent in self-generated and unregulated fill activities: 'The Legislature further finds and declares that the present uncoordinated, haphazard manner in which the San Francisco Bay is being filled threatens the bay itself and is therefore inimical to the welfare of both present and future residents of the area surrounding the bay; that while some individual fill projects may be necessary and desirable for the needs of the entire bay region, *and while some cities and counties may have prepared detailed master plans for their own bay lands, the fact remains that no governmental mechanism exists for evaluating individual projects as to their effect on the entire bay;* and that further piecemeal filling of the bay may place serious restrictions on navigation in the bay, may destroy the irreplaceable feeding and breeding grounds of fish and wildlife in the bay, may adversely affect the quality of bay waters and even the quality of air in the bay area, and would therefore be harmful to the needs of the present and future population of the bay region. (Italics added.) (Gov. Code, § 66601.)

"The Legislature then finds that a new, regional approach is necessary, and charges the BCDC with the task of preparing 'a comprehensive and enforceable plan for the conservation of the water of the bay and the development of its shoreline.' The BCDC is specifically obligated to consider the master plans of cities and counties surrounding the bay in formulating its own plan. (Gov. Code, § 66603.) In the next section the Legislature empowers the BCDC 'to issue or deny permits, after public hearings,

for any proposed project that involves placing fill in the bay or extracting submerged materials from the bay.' This power is deemed 'essential' in order 'to protect the present shoreline and body of the San Francisco Bay to the maximum extent possible.' (Gov. Code, § 66604.)"

In creating the Hunters Point Reclamation District in 1955, the Legislature found "that a compelling economic necessity exists for the reclaiming, drainage, and development of tidelands and submerged lands now lying in the district . . . which area now serves no useful purpose for industry, commerce, or navigation. . . ." (Water Code Appendix § 78-1.) Yet, when the BCDC was created in 1965, it was stated to be the policy of the state "to protect the present shoreline and body of the San Francisco Bay to the maximum extent possible. . . ." (Gov. Code, § 66604.) As contended by respondents, to the extent that these expressions of policy are in conflict, the act creating the BCDC, being more recent in time, should control. (See *Coker* v. *Superior Court,* 70 Cal.App.2d 199, 201 [160 P.2d 885].)

The strong public purpose behind the McAteer-Petris Act is readily apparent from a reading of the act and the above quoted language from the California Supreme Court. In view of this purpose, and the power given the BCDC "to issue or deny permits, after public hearings, for *any* proposed project that involves placing fill in the bay," (Gov. Code, § 66604) it would be clearly inconsistent to construe the two acts in the manner urged by appellant. (Italics added.)

Furthermore, the filling of the bay lands located within the Hunters Point Reclamation District is definitely an "individual project" which may have an effect upon the entire bay. One of the purposes for which the BCDC was created was to study the effect of such projects upon the entire bay. (Gov. Code, § 66601.) To exempt lands located within the Hunters Point Reclamation District from the control of the BCDC could impede the BCDC in carrying out its functions.

Appellant also argues that the Hunters Point Reclamation District Act is a specific act and that the McAteer-Petris Act is a general act, and therefore the former controls the latter because of the principle that where two legislative acts are in conflict the specific must control over the general. (*People* v. *Pacific Improv. Co.,* 130 Cal. 442, 446 [62 P. 739]; *Bixby* v. *Pierno* *(Cal.App.) 78 Cal.Rptr. 606.) ■ However, the specific controls the general only in absence of a clear intention of the Legislature to the contrary. (See *Warne* v. *Harkness,* 60 Cal.2d 579, 588

*A hearing was granted by the Supreme Court on October 1, 1969. The final opinion of that court is reported in 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242]. (This case was previously known as *Bixby* v. *Volk.*)

[35 Cal.Rptr. 601, 387 P.2d 377]; *Bixby* v. *Pierno, supra.*) In the instant case, the language of the McAteer-Petris Act is so strong as to make it abundantly clear that the Legislature intended the BCDC to have authority to grant or deny *any* request for permission to fill the bay lands. It necessarily follows that the BCDC has authority to deny a request to fill bay land located within the Hunters Point Reclamation District if that land would otherwise be within the jurisdiction of the BCDC.

 Appellant contends that on April 9, 1966 it submitted a permit application on the printed application form provided by the Commission; that the application contained all the information requested by the printed form and since no action was taken on the application within 60 days, the permit must be deemed granted pursuant to Government Code section 66632, subdivision (d). Government Code section 66632, subdivision (d) provided, at the time the application was filed, that the permit shall be automatically granted if the Commission fails to take specific action on the permit within 60 days after it is received.

The trial court found that on April 9, 1966, Candlestick submitted to the Commission a draft application for a permit to fill its land; that additional information requested by the deputy director of the Commission relative to the draft application was supplied by Candlestick without objection; that the application of Candlestick for a permit was filed with the Commission on December 6, 1966, and the application for a permit was denied on January 20, 1967. It was therefore found that Candlestick did not obtain an automatic permit pursuant to the provisions of Government Code section 66632, subdivision (d) because the Commission took specific action denying the permit application within 60 days of receipt of said application.

By letter of January 5, 1966 the Commission staff requested that the enclosed application form be submitted first in a single draft copy which would be reviewed and commented upon by the Commission if necessary. The applicant would then be requested to submit 100 copies of the completed application. On April 8, 1966, Candlestick sent a draft application to the Commission with a covering letter stating: "Please notify us if any further information or material is required." By letter dated May 6, 1966, the BCDC staff requested additional information in the form of a map of the area prepared to a certain scale and certain factual information. On November 12, 1965, the BCDC adopted a motion providing that the Commission should not consider an application unless the applicant provided answers on the application for all of the applicable questions. Alvin Baum, Jr., deputy director of the BCDC, testified in his deposition that the question

on the application form relating to placement of fill was not adequately answered in the April 9, 1966 draft application. By letter dated June 7, 1966, Candlestick provided the requested information. By letter of July 8, 1966, the BCDC staff requested further information which was provided under cover of a letter dated November 20, 1966. On December 1, 1966, Mr. Baum, of the BCDC staff, sent a letter to Candlestick which indicated that the map provided was not adequate for their needs but that he was having another prepared. Mr. Baum requested Candlestick to stipulate that for purposes of the 60-day automatic approval provision of Government Code section 66632, subdivision (d) the application shall be treated as if it were filed on December 6, 1966, which would be the approximate date that the extra five copies of the application and the map exhibit would be received. The stipulation was apparently executed by Candlestick on December 6, 1966.

Appellant, citing *Napa Sav. Bank* v. *County of Napa,* 17 Cal.App. 545, 548-549 [120 P. 449], contends that the stipulation is not binding because the April 9, 1966 submission was an application which must be deemed automatically granted after 60 days, and any further action by the Commission would be null and void because it loses jurisdiction after that time. However, appellant's argument assumes that the April 9, 1966 submission was an application. The correspondence between appellant and the Commission and the testimony of Mr. Baum in his deposition were sufficient to justify the court's finding that the document submitted on April 9, 1966 was a draft application rather than a completed application. In view of the finding that this document was only a draft application for a permit, it cannot be said that the Commission lost jurisdiction over the matter 60 days after it was filed.

Therefore, the stipulation was a valid agreement. ■ "Of course, a finding made contrary to a deliberate stipulation cannot stand in the trial court or upon appeal." (*Grand* v. *Griesinger,* 160 Cal.App.2d 397, 408 [325 P.2d 475], and cases cited therein.) ■ Further, as contended by respondents, the April 9, 1966 draft can have no significance since mere receipt by the BCDC of the incomplete draft application cannot be considered in law to start the 60-day time period. (Cf. *Rakow* v. *Swain,* 178 Cal.App.2d 895, 899 [3 Cal.Rptr. 404].) Consequently, appellant's application was not automatically granted by the failure of the Commission to act upon it within 60 days after the draft application of April 9, 1966 was received.

■ Appellant contends that the provisions of section 66622 of the Government Code, which allowed commission members to designate proxies

to act and vote in their place, constitute an unconstitutional delegation of legislative power because no standards were provided for the selection of proxies.

Although there are no standards governing the qualifications of members of the Commission or their proxies set forth in the McAteer-Petris Act itself, the provisions of Government Code section 1020 et seq., relating to the disqualifications from office of public officers and employees, must be read in conjunction with the McAteer-Petris Act. The basic qualifications for office are that the person holding the office be at least 21 years of age, a citizen of this state and cannot have been convicted of a felony. (Gov. Code, §§ 1020, 1021.)

Furthermore, the selection of a proxy is not a legislative act, any more than the selection of the commissioners by the respective appointing powers listed in Government Code section 66620 would be considered a legislative act. Appellant does not contend that there has been an unconstitutional delegation of legislative power to the BCDC when it is acting through the regular members of the Commission. Clearly, there has been no attempt to vest in the commissioners an arbitrary power, or an uncontrolled and unguided discretion in matters concerning the functioning of the Commission in studying the development of the San Francisco Bay and in determining whether to grant a request for a permit to fill bay lands because adequate standards have been set forth in the act. (See Gov. Code, § 66632, subdivision (d); *Tarpey* v. *McClure,* 190 Cal. 593, 600 [213 P. 983].) Likewise, proxies acting in the place of the commission members are guided by the same standards.

Appellant argues that discretionary powers committed to an administrative tribunal cannot be delegated to others, citing *Sacramento Chamber of Commerce* v. *Stephens,* 212 Cal. 607, 610 [299 P. 728]. While this is true as a general proposition of law, it is not applicable in the present situation. Here the Legislature has created an administrative tribunal and committed discretionary powers to the commission members *and their proxies.* This situation is manifestly different from a situation in which the Legislature commits discretionary powers to an administrative tribunal and the members of that tribunal delegate their power to others *without any prior authorization* from the Legislature. In this latter situation the attempted delegation would clearly be contrary to law and void. But that situation is not present here, because the Legislature specifically authorized proxies to act in the place of the commissioners.

Appellant also contends that the Commission was powerless to act on its application because only 12 members of the Commission were present

who were entitled to vote when the application was denied. Appellant's position is that Government Code section 66632, subdivision (d) requires 13 affirmative votes of members of the Commission before a permit will be granted and that the section does not provide that such votes may be by proxies. This contention is without merit. ▮ The cardinal rule of statutory construction is that a statute must be read and considered as a whole in order that the true legislative intention may be determined. The various parts of a statute must be construed together, and harmonized, so far as it is possible to do without doing violence to the language or to the spirit and purpose of the act, so that the statute may stand in its entirety. (*In re Bandmann*, 51 Cal.2d 388, 393 [333 P.2d 339]; *People* v. *Moroney*, 24 Cal.2d 638, 642-643 [150 P.2d 888].) ▮ " 'The numbering of sections of a statute is an artificial practice resorted to purely for convenience, and does not prevent the construction of the statute as a whole.' " (*Renken* v. *Compton City School Dist.*, 207 Cal.App.2d 106, 117 [24 Cal.Rptr. 347].) ▮ The sections are to be considered together. In the instant case, Government Code section 66622 authorized members of the Commission to appoint proxies to attend meetings and to vote. When section 66632 is considered along with section 66622 it is obvious that the Legislature intended proxies to have authority to vote upon an application for a permit. *Bandini Estate Co.* v. *County of Los Angeles*, 28 Cal.App.2d 224, 229 [82 P.2d 185], relied upon by appellant, is not in point because it involved a situation in which one member of the board of supervisors constituted himself a board of equalization when the statutes involved required the whole "Board" to act.

▮ Appellant also claims that some of the proxies who voted to deny its application were not designated at the time of the appointment of the designating member of the Commission and thus section 66622 was violated. This contention is also without merit. ▮ A statute must be given a reasonable construction, and its words " 'must be given such interpretation as will promote rather than defeat the general purpose of the law.' " (*Western States Newspapers, Inc.* v. *Gehringer*, 203 Cal.App.2d 793, 798 [22 Cal.Rptr. 144], quoting from *In re Lynwood Herald American*, 152 Cal. App.2d 901, 909 [313 P.2d 584].) ▮ If appellant 's construction of the statute were adopted it would prevent the replacement of a proxy if it became necessary to do so because the replacement would not be appointed at the time of the appointment of the commission member.

▮ Appellant contends that it was denied due process of law because it was not permitted to cross-examine adverse witnesses or to rebut evidence received by the Commission *dehors* the record. An examination of the transcript of the hearing shows that this contention is without merit. Candlestick

was at all times represented by counsel who did not once request to question any person. The right to cross-examination may be waived. (*People* v. *Dessauer,* 38 Cal.2d 547, 552 [241 P.2d 238].)

 Appellant's second point is that it was not given an opportunity to rebut evidence received by the Commission *dehors* the record. The record shows that the Commission received letters from various organizations and individuals which disagreed with Candlestick's reply to certain questions or which expressed a personal protest against the granting of a permit to fill bay lands. The receipt of these letters was disclosed at the hearing. There was also a discussion concerning the location of a new freeway in the area of appellant's land. Appellant's counsel was present and could have challenged any statement made during the discussion of the location of the freeway.

Perhaps Candlestick's contention goes to the fact that the staff of the Commission, in answering questions and making its recommendation, brought out information on its own without relying solely on statements made by persons at the hearings. However, there was nothing wrong with this procedure. Government Code section 66632, subdivision (c) provides that the Commission shall hold a public hearing as to the proposed project and "conduct such further investigation as it deems necessary." The statute contemplates that the BCDC may seek facts through its staff to aid it in determining whether or not a permit should be granted. Such a practice is sanctioned so long as the information obtained is not concealed. Here, as in the case of *Flagstad* v. *City of San Mateo,* 156 Cal.App.2d 138 [318 P.2d 825], there was no concealment.

*English* v. *City of Long Beach,* 35 Cal.2d 155, 158 [217 P.2d 22, 18 A.L.R.2d 547], relied upon by appellant, is not controlling in this case because in *English* the evidence received by the civil service board was not disclosed.

 Appellant's final contention is that the lower court erred in sustaining without leave to amend respondents' demurrer to the cause of action seeking damages for the taking of its property without just compensation.

Respondents argue that the legislation creating the BCDC is a valid exercise of the police power and thus the Commission's actions do not constitute a "taking" of private property. As stated by the California Supreme Court in *Miller* v. *Board of Public Works,* 195 Cal. 477 at p. 484 [234 P. 381, 38 A.L.R. 1479]: "The police power of a state is an indispensable prerogative of sovereignty and one that is not to be lightly limited. Indeed, even though at times its operation may seem harsh, the imperative necessity for its existence precludes any limitation upon its

exercise save that it be not unreasonably and arbitrarily invoked and applied. [Citations.] . . .

"In short, the police power, as such, is not confined within the narrow circumspection of precedents, resting upon past conditions which do not cover and control present-day conditions obviously calling for revised regulations to promote the health, safety, morals, or general welfare of the public. That is to say, as a commonwealth develops politically, economically, and socially, the police power likewise develops, within reason, to meet the changed and changing conditions . . ."

■ It is a well settled rule that determination of the necessity and form of regulations enacted pursuant to the police power "is primarily a legislative and not a judicial function, and is to be tested in the courts not by what the judges individually or collectively may think of the wisdom or necessity of a particular regulation, but solely by the answer to the question is there any reasonable basis in fact to support the legislative determination of the regulation's wisdom and necessity?" (*Consolidated Rock Products Co.* v. *City of Los Angeles,* 57 Cal.2d 515, 522 [20 Cal. Rptr. 638, 370 P.2d 342].) Furthermore, even if the reasonableness of the regulation is fairly debatable, the legislative determination will not be disturbed. (*Hamer* v. *Town of Ross,* 59 Cal.2d 776, 783 [31 Cal.Rptr. 335, 382 P.2d 375], and cases cited therein.) Under the power of eminent domain property cannot be taken for public use without just compensation. However, under the police power property is not taken for use by the public; its use by private persons is regulated or prohibited where necessary for the public welfare. (3 Witkin, Summary of Cal. Law (1960) Constitutional Law, § 159, p. 1970; see *Pacific Tel. etc. Co.* v. *Eshleman,* 166 Cal. 640 [137 P. 1119].)

■ As contended by respondents, the legislative statements in Government Code sections 66600, 66601 and 66603 clearly define the public interest in San Francisco Bay and establish a rational basis for the legislation creating the Commission and for preventing an owner of bay lands from filling those lands. In those sections the Legislature has determined that the bay is the most valuable single natural resource of the entire region and changes in one part of the bay may also affect all other parts; that the present uncoordinated, haphazard manner in which the bay is being filled threatens the bay itself and is therefore inimical to the welfare of both present and future residents of the bay area; and that a regional approach is necessary to protect the public interest in the bay. In order to protect the bay during the formulation of the conservation and development plan

for the bay the Commission must have the power to regulate any proposed project that involves placing fill in the bay. (Gov. Code, § 66604.)

Appellant, however, contends that the police power invades the area of eminent domain when the result of that power is to deprive the private property in question of any value it may have had.

■ Without question, an *undue* restriction on the use of private property is as much a taking for constitutional purposes as appropriating or destroying it. (*Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393, 415-416 [67 L.Ed. 322, 325-326, 43 S.Ct. 158, 28 A.L.R. 1321]; *People* v. *Associated Oil Co.,* 211 Cal. 93, 100 [294 P. 717].) However, it cannot be said that refusing to allow appellant to fill its bay land amounts to an undue restriction on its use. In view of the necessity for controlling the filling of the bay, as expressed by the Legislature in the provisions discussed above, it is clear that the restriction imposed does not go beyond proper regulation such that the restriction would be referable to the power of eminent domain rather than the police power. (See *Pacific Tel. etc. Co.* v. *Eshleman, supra,* 166 Cal. 640, 662.)

The remaining cases cited by appellant are distinguishable on their facts. In *Dooley* v. *Town Plan & Zoning Com.,* 151 Conn. 304 [197 A.2d 770], the restrictions placed upon the use of the plaintiff's land were so extensive that the land could be used for no other purpose than for a flood control district, with the result that the land was depreciated in value by 75 percent. In *Morris County Land Improv. Co.* v. *Township of Parsippany-Troy Hills,* 40 N.J. 539 [193 A.2d 232], the practical effect of the regulation was to appropriate private property for a flood water detention basin and open space. The purpose of the regulations and restrictions imposed in the instant case is not merely to provide open spaces. Rather, they are designed to preserve the existing character of the bay while it is determined how the bay should be developed in the future. *Peacock* v. *County of Sacramento,* 271 Cal.App.2d 845 [77 Cal.Rptr. 391], is also not in point because in that case it was found that the restrictions imposed by the county were done with the intent to prevent any increase in the cost of acquisition of the lands between the time of the enactment of the ordinance and such time as the county would be ready to acquire or purchase the subject property. (*Id* at p. 853.) Restrictions for this purpose are clearly unreasonable.

■ Therefore, the restrictions placed upon appellant's use of its land are a valid exercise of the police power. Consequently, appellant was not entitled to damages for confiscation of its property without compensation. In this situation appellant could not allege facts sufficient to consti-

tute a cause of action, and the demurrer was properly sustained without leave to amend. (2 Witkin, Cal. Procedure (1954) Pleading, § 506, p. 1498.)

The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied October 23, 1970, and appellant's petition for a hearing by the Supreme Court was denied November 18, 1970. Peters, J., was of the opinion that the petition should be granted.