TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 93-313 |
| of | : | |
| | : | JULY 27, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE THOMAS H. GORDINIER, COUNTY COUNSEL, COUNTY OF SOLANO, has requested an opinion on the following question:

May the Legislature create a regional public agency, delegating to the agency's appointed commissioners the authority to make decisions affecting land use and land use policies?

CONCLUSION

The Legislature may create a regional public agency, delegating to the agency's appointed commissioners the authority to make decisions affecting land use and land use policies, provided that the powers conferred upon the agency are not local in nature and the Legislature makes the necessary "fundamental policy determinations" in the enabling legislation.

ANALYSIS

The question presented for resolution concerns the regional approach to land use planning in the Sacramento-San Joaquin delta area which was mandated by the Legislature in the Johnston-Baker-Andal-Boatwright Delta Protection Act of 1992 (Pub. Resources Code, §§ 29700-29780; hereafter "Act").[1] The legislation's purpose is to protect the Sacramento-San Joaquin delta as a natural resource of statewide significance. (§ 29701.)[2] Toward that end, the Act creates the

_____

[1]All unidentified section references hereafter are to the Public Resources Code.

[2]Section 29701 provides as follows:

"The Legislature finds and declares that the Sacramento-San Joaquin Delta is a natural resource of statewide, national, and international significance, containing irreplaceable resources, and it is the policy of the state to recognize, preserve, and

1.                                                                                        93-313

Delta Protection Commission (§§ 29735-29759; hereafter "Commission"), a 19-member body which is required to prepare and adopt by July 1, 1994, a comprehensive long-term resource management plan for land uses within the statutorily described "primary zone" of the delta (§§ 29760-29762).

Within 180 days of the Commission's adoption or amendment of the regional plan, all affected local governments[3] must submit proposed amendments to their general plans for approval by the Commission. (§§ 29763, 29763.5.) These amendments are to make the affected cities' and counties' general plans consistent with the regional plan in the delta's primary zone. (Ibid.) In approving general plan amendments, the Commission must make the following findings: the general plan and any development approved or proposed that is consistent with the general plan are consistent with the Commission's regional plan and will not result in wetland or riparian loss, degradation of water quality, increased nonpoint source pollution, degradation or reduction of "Pacific flyway" habitat, reduced public access (provided the access does not infringe on private property rights), increased public exposure to flood hazard, adverse impact on agricultural land, degradation or impairment of levee integrity, adverse impact on navigation, or increased requirements or restrictions upon agricultural practices in the primary zone. (§ 29763.5.) Local general plans are preempted by the regional plan as to those areas within the delta's primary zone. (§ 29764.)

Pursuant to section 29735, the Commission consists of the following: (1) five elected county supervisors, one from each county within the delta; (2) three elected city council members, one from each of three specified geographical areas to be appointed by city selection committees; (3) five members of different reclamation districts located within the primary zone, who are residents of the delta and who are elected by the trustees of reclamation districts within specified areas of the delta; (4) five directors of various state departments, who are appointees of the Governor; and (5) the executive officer of the State Lands Commission.

We are asked to determine whether the Constitution prohibits the Legislature from creating a regional public agency with the authority to exercise land use controls previously vested in city and county governments and, if so, whether that authority may be exercised by persons who are not the duly elected representatives of the local electorate. We conclude generally that the Legislature has such authority.

THE POWER TO ENACT LEGISLATION

In *Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, the Supreme Court reviewed the principles to be applied in determining whether the Legislature may enact various legislative schemes. It stated:

"We are guided in our inquiry by well settled rules of constitutional construction. Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and

protect those resources of the delta for the use and enjoyment of current and future generations."

[3]The affected local governments are "the Counties of Contra Costa, Sacramento, San Joaquin, Solano, and Yolo, and the Cities of Sacramento, Stockton, Tracy, Antioch, Pittsburg, Isleton, Lathrop, Brentwood, Rio Vista, and West Sacramento." (§ 29725.)

referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution. [Citations.] In other words, `we do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited.' [Citation.]

"Secondly, all intendments favor the exercise of the Legislature's plenary authority: `If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used.' [Citations.] Conversely, a constitutional amendment removing those restrictions and limitations should, in cases of doubt, be construed liberally `in favor of the Legislature's action.'" (Id., at p. 691.)

Essentially, then, in this opinion we are asked to examine the Constitution to see if a prohibition is contained therein against the Legislature creating a regional public agency comprised of appointed commissioners with the duty to make land use decisions.

DELEGATION OF LEGISLATIVE AUTHORITY

Traditionally, land use control in California has been a matter of local concern (Longtin, *California Land Use* (2nd ed., 1987) § 10.01, p. 883) exercised by cities and counties pursuant to the constitutional grant of power contained in Article XI, section 7 of the Constitution. This constitutional provision states:

"A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

In three notable departures from the norm, however, the state has established regional agencies with the power to exercise land use functions in the affected regions. Each of these regional agencies--the San Francisco Bay Conservation and Development Commission (Gov. Code, §§ 66620-66647), the Tahoe Regional Planning Agency (Gov. Code, §§ 67040-67109), and the California Coastal Commission (§§ 30300-30344)--exercises jurisdiction over a limited geographical area containing resources found to be of statewide significance; consists of members who have been appointed by either the Governor or the Legislature or who serve as representatives of other public agencies within the region; is responsible for preparing and implementing a long-term resource management plan; and uses a permit system to control private development within its jurisdiction. The authority of local governments to plan and regulate land uses within any of these regions continues to exist but is limited by the scope of the power granted to the state-created regional entity.

The three particular regional agencies specified above have survived constitutional challenges to their enabling statutes. (*People ex rel. Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480; *CEEED* v. *California Coastal Zone Conservation Commission* (1974) 43 Cal.App.3d 306; *Candlestick Properties, Inc.* v. *San Francisco Bay Conservation and Development Commission* (1970) 11 Cal.App.3d 557.) The key constitutional issue which is addressed in these judicial

challenges and which is relevant to the question presented here[4] concerns the conditions under which the delegation of legislative power to a regional agency such as the Commission is permissible.

In *People ex rel. Younger* v. *County of El Dorado*, *supra*, 5 Cal.3d 480, the Supreme Court determined that because the subject matter of the Tahoe Regional Planning Compact "is of regional, rather than local, concern" (id., at p. 492), "it does not delegate to the Tahoe Regional Planning Agency the same powers granted to the counties" (id., at p. 498). The court specifically rejected the argument that the powers of the regional agency were local in nature and therefore intruded upon local prerogatives:

> "The counties argue that the powers of zoning and planning conferred on the Agency deal with matters which traditionally have been of exclusively local concern. (See Gov. Code, § 65800 et seq.) But such argument ignores the very language of the Compact. Section 66801, article VI, subdivision (a), which sets forth the Agency's powers, provides that the governing body shall adopt all necessary ordinances, rules and regulations `to effectuate the adopted *regional* and interim plans'; that all such ordinances, rules and regulations shall establish minimum standards `applicable *throughout the basin*'; that the regulations shall contain `*general, regional standards*' including `zoning'; and that the ordinances, rules and regulations shall be confined to matters `which are general and regional in application. . . .' (All italics added.) As we have already pointed out, section 66801, article V, which confers upon the Agency authority with respect to planning, clearly shows that such authority has to do with *regional* planning. It is beyond dispute, then, that the powers as to planning and zoning, which the counties single out as violative of the Constitution are not powers local in nature and purpose." (Id., at p. 497.)

Based upon the regional nature of the functions in question, the court held that the delegation of legislative authority to the regional agency did not violate section 7 of Article XI of the Constitution.[5]

Looking at the express provisions of the Act, we find that it contains extensive legislative findings establishing a regional purpose and need. These findings include the following: the Sacramento-San Joaquin delta is a natural resource of statewide, national, and international significance, containing irreplaceable resources (§ 29701); the delta is an agricultural region of great value to the state and nation, and agricultural lands located within the primary zone should be protected from the intrusion of nonagricultural uses (§ 29703); the delta's wildlife and wildlife

---

[4]Some of the grounds for the constitutional challenges in the cited cases (e.g., based on due process considerations, taking of private property, municipal home rule, right to travel) are not particularly of concern here because the Commission was not created by an initiative measure, was not intended by the Legislature "to exercise [its] power in a manner which will take or damage private property for public use, without payment of just compensation" (§ 29714), and is specifically denied the authority to issue permits (§ 29764).

[5]The court in fact addressed several constitutional provisions which together confer upon specified local governmental bodies broad powers over purely local affairs but found the legislation in question to be unaffected by any of them since its subject matter was of regional rather than local concern. (See *People ex rel. Younger* v. *County of El Dorado*, *supra*, 5 Cal.3d at p. 492.) Of these provisions, we discuss only Article XI, section 7, as it alone raises a viable issue concerning the validity of the Act.

habitats are highly valuable, providing critical wintering habitat for waterfowl and other migratory birds using the "Pacific flyway" (§ 29704); the cities, towns, and settlements within the delta are of significant historical, cultural, and economic value, and their continued protection is important to the economic and cultural vitality of the region (§ 29708); the inland ports of Sacramento and Stockton constitute economic and water dependent resources of statewide significance (§ 29711); and the delta's waterways and marinas offer recreational opportunities of statewide and local significance and are a source of economic benefit to the region (§ 29712).

The Legislature's findings also indicate that the delta region is threatened: the resource values of the delta have deteriorated and further deterioration threatens the maintenance and sustainability of the delta's ecology, fish and wildlife populations, recreational opportunities, and economic productivity (§ 29706); the levied islands and tracts of the delta and portions of its uplands are floodprone areas of critical statewide significance due to the public safety risks and the costs of public emergency responses to floods, and improvement and ongoing maintenance of the levee system is a matter of continuing urgency to protect farmlands, population centers, the state's water quality, and significant natural resource and habitat areas of the delta (§ 29704).

The Legislature specifically found that a regional approach to land use planning in the delta is necessary if the region is to successfully deal with the challenges it faces. In section 29707, the Legislature declared:

". . . [T]here is no process by which state and national interests and values can be protected and enhanced for the delta, and that, to protect the regional, state, and national interests for the long-term agricultural productivity, economic vitality, and ecological health of the delta resources, it is necessary to provide and implement delta land use planning and management by local governments."

Section 29709 states:

"(a) Regulation of land use and related activities that threaten the integrity of the delta's resources can best be advanced through comprehensive regional land use planning implemented through reliance on local government in its local land use planning procedures and enforcement.

"(b) In order to protect regional, state, and national interests in the long-term agricultural productivity, economic vitality, and ecological health of delta resources, it is important that there be a coordination and integration of activities by the various agencies whose land use activities and decisions cumulatively impact the delta."

Accordingly, the powers conferred upon the Commission are not for local purposes, but are to achieve the regional goals of preserving and enhancing the delta.

With respect to the mechanism chosen by the Legislature to accomplish its regional goals, we note that the Commission is without the authority to issue permits as a means to control land uses or development in the delta, relying instead upon the authority to review the general plans of local governments to ensure their consistency with the Commission's regional plan.[6]  Local

---

[6]Review of local land use plans by the California Coastal Commission was authorized by the Legislature in 1976. (Stats. 1976, ch. 1330, § 1.)  Under section 30512, the land use plan of a city's or county's proposed local coastal program must be submitted for approval.  Review is also mandated by section 30513 for local zoning ordinances covering areas within the jurisdiction of the

general plans, which lie at the heart of local land use planning (see Gov. Code, § 65300), will now be subject to the direct control of the Commission and consequently will no longer constitute a purely local prerogative.

However, it should be observed that the Commission's regional plan will force modification of local general plans only in the delta's primary zone. (See §§ 29760, 29764.) In addition, any required changes to a general plan are for the purpose of achieving regional goals as stated in the Act's legislative findings and declarations. (See §§ 29763.5, 29765.) Lastly, we note that "[n]othing [in the Act] shall deny the right of . . . local governments to . . . apply enforceable restrictions or zoning within the primary zone . . . ." (§ 29766.) Local governments are thus not prevented from exercising all land use planning authority within the delta's primary zone.

On the basis of the foregoing, we conclude that the Act does not delegate to the Commission the same powers granted to the affected cities and counties and therefore does not violate Article XI, section 7 of the Constitution. As its subject matter is clearly of regional rather than local concern, the Act meets the key criterion for withstanding constitutional challenge to its land use planning provisions.[7]

The Act also meets the basic test for the delegation of any legislative power by the Legislature. As expressed in *CEEED* v. *California Coastal Zone Conservation Com.*, *supra*, 43 Cal.App.3d 306:

"The constitutional doctrine prohibiting delegation of legislative power rests on the premise that the Legislature may not abdicate its responsibility to resolve the `truly fundamental issues' by delegating that function to others or by failing to provide adequate directions for the implementation of its declared policies. [Citation.] Consequently, where the Legislature makes the fundamental policy decision and delegates to some other body the task of implementing that policy under adequate safeguards, there is no violation of the doctrine. [Citations.]" (Id. at p. 325.)

Here, the Legislature has made the fundamental policy decisions (§§ 29701-29713) and has accompanied the delegation of authority with appropriate and adequate directions and procedural safeguards (§§ 29714-29716, 29760, 29762, 29763-29772). (See *City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal.App.3d 521, 529.) Where the Legislature has carefully set forth its decision on the basic policy issues, it may delegate the duty of carrying out its command to an administrative body. (*People ex rel. Younger* v. *County of El Dorado*, *supra*, 5 Cal.3d at p. 507.)

---

commission. The court did not have occasion to review such requirements in its 1971 decision regarding the validity of the Coastal Zone Conservation Act. (*CEEED* v. *Calif. Coastal Zone Conservation Com.*, *supra*, 43 Cal.App.3d 306.)

[7]As is evident from the legislative findings enumerated above, the Act may also be said to involve matters of statewide concern. Consequently the Act would not constitute an invalid state intrusion into the "municipal affairs" of chartered cities in violation of Article XI, section 5, subdivision (a), of the Constitution. (See *CEEED* v. *California Coastal Zone Conservation Com.*, *supra*, 43 Cal.App.3d at p. 320; 70 Cal.Ops.Atty.Gen. 220, 226-227 (1987).)

CONSTITUTIONAL VOTING REQUIREMENTS

We next turn to the question whether the Constitution requires the Commission members to be directly elected by the local electorate. As previously indicated, all but six members of the Commission are persons who have been elected to local public office in the delta region. These locally elected officials include five county supervisors, three city council members, and five trustees of reclamation districts. The other six members serve on the Commission by virtue of their appointive positions with state agencies. While a large majority of the members of the Commission may be said to be responsive to the local electorate, none of the commissioners are directly elected to the Commission by a vote of the people.

In *People ex rel. Younger* v. *County of El Dorado*, *supra*, 5 Cal.3d 480, the Counties of El Dorado and Placer contended that the Tahoe Regional Planning Compact was void because the regional agency members were appointed rather than elected. Noting the precedent of the San Francisco Bay Conservation and Development Commission (Gov. Code, § 66620), the court found no constitutional infirmity in the appointment, rather than the election, of the governing body and determined that the "one person, one vote" principle only applied to elected officials. (Id., at pp. 503-504.) With respect to the presence of "outside" state members on the agency board, the court stated:

". . . [P]ersons not residing within the Tahoe Basin have a very real and direct interest in the actions of the Agency. Aside from the general interest of the people of this state, including its vacationers, in the preservation of Lake Tahoe, it is common knowledge that many nonresidents own vacation homes and other property within the region. They will, of course, be directly affected by any planning or zoning by the Agency. Finally, the Compact represents an innovative attempt to deal with a problem directly affecting nonresidents of the Tahoe Basin, as well as residents. The Compact gives to the residents of the region a clear majority of the representation on the governing board, since such residents are the persons most intimately involved with the Agency. Yet, as we have seen, the general population of the state has a very substantial, if lesser, interest in the Agency. The public at large is represented by the two members sitting *ex officio* and by the two members appointed by the governors." (Id. at 506.)[8]

Here also, the "one person, one vote" principle does not represent a constitutional constraint since the Commission is an appointive body. (See 73 Ops.Cal.Atty.Gen. 147 (1990) [equal protection clause principle of "one person, one vote" not applicable to appointed members of local transportation authority].) And because the delta is a natural resource of statewide significance (§ 29701), delta residents are not entitled to exclusive representation on the Commission.

Finally, we note the potential application of another constitutional election requirement -- Article XI, section 1, subdivision (a). It provides in part:

"The state is divided into counties which are legal subdivisions of the State. The Legislature shall prescribe uniform procedure for county formation,

---

[8]Although the court's decision concerned an interstate agreement, subsequent cases have established the constitutionality of appointed commissions with regulatory power over environmentally sensitive areas lying entirely within California. (See *State* v. *Superior Court* (1974) 12 Cal.3d 237; *CEEED* v. *Coastal Commission, supra,* 43 Cal.App.3d 306.)

consolidation, and boundary change. Formation or consolidation requires approval by a majority of electors voting on the question in each affected county. A boundary change requires approval by the governing body of each affected county. . . ."

"Consolidation" means the unification of two or more counties by dissolution of the existing ones and creation of a single new county. (See Gov. Code, §§ 23500-23580.) If the entire territory of each affected county constituted the delta's primary zone (§ 29728), it might be argued that the Act's provisions would require the approval of a majority of the electors in each affected county. However, only portions of each of the affected counties are included in the delta's primary zone, and it is only within that zone that the counties are required to yield any aspect of their regulatory authority. (§§ 29760, 29764.) Moreover, each county may continue to make its own land use decisions, subject to a determination that the county's general plan and any development approved or proposed thereunder is consistent with the Commission's regional plan. Such coordination of land use authority for a delineated portion of certain counties does not, in our view, qualify as a "consolidation" of those counties.

We conclude that the Legislature may create a regional public agency, delegating to the agency's appointed commissioners the authority to make decisions affecting land use and land use policies, provided that the powers conferred upon the agency are not local in nature and the Legislature makes the necessary "fundamental policy determinations" in the enabling legislation.

* * * * *